[Crim. No. 543.  Second Appellate District.—May 28, 1917.]

## In the Matter of DAVID BRODIE, a Person Under Twenty-one Years of Age.

JUVENILE ACT—COMMITMENT WITHOUT JURY TRIAL—CONSTITUTIONALITY
OF ACT.—Under the Juvenile Act, no infringement of constitutional
rights is worked because the accused is not given a right to trial
by jury, as the orders of commitment in such cases are not for
the purpose of inflicting punishment, but to provide suitable guard-
ianship, either by individuals or under the official supervision of
the superintendents of state schools.

ID.—DEPRIVATION OF CUSTODY OF MINOR — FINDINGS ESSENTIAL.—In
view of the provisions of section 9b of the Juvenile Act, it is
essential to sustain a valid order of commitment, where a minor is
taken from the custody of a parent or guardian, that a finding be
made that the welfare of the minor requires the taking away of
such custody.

APPEAL from a judgment of the Superior Court of Los
Angeles County.  Sidney N. Reeve, Judge.

The facts are stated in the opinion of the court.

Joseph W. Mowell, for Appellant.

U. S. Webb, Attorney-General, and Robert M. Clarke, Dep-
uty Attorney-General, for Respondent.

JAMES, J.—This is an appeal taken on behalf of David
Brodie, who was by the judge of the juvenile court of Los
Angeles County declared to be a ward of that court and or-
dered committed to the Preston School of Industry, at Ione,
until he should become twenty-one years of age.  The minor
at the time the order was made in February, 1917, was of the
age of sixteen years.  The complete record of the testimony
heard, together with the various orders and findings of the
court, are brought up under the alternative method of appeal.
It appears that a petition was filed, the purpose being to have
the minor declared a ward of the juvenile court, in which one
or more misdemeanors were alleged to have been committed
by the young man complained against.  A hearing was had
after notice to and in the presence of the mother, the natural

guardian of the accused. The court questioned the minor, who admitted the truth of the charges made against him. His mother, with whom he resided, stated that he had always been of good habits about home and, excepting for the irregularities mentioned in the petition and which had been committed after association with certain other boys, no cause for complaint had arisen. It was shown that the boy had spent a part of two years in the high school of Los Angeles, and that he had been employed with a certain firm, a member of which expressed himself as being well pleased with the demeanor of the boy and his work while in that employment. It was stated to the judge that on behalf of the mother, evidence could be offered to show that the boy would be furnished steady employment. The report of the probation officer fully sustained all of the assertions made by the boy and his mother as to the previous good character and industrious habits of the young man. The mother desired to retain the custody of the boy, but the court having theretofore committed two other boys concerned in the same transactions to the Preston School, declared that he did not believe any difference should be made as between the boys in their treatment, and consequently required that Brodie be committed to the Preston School.

On this appeal, among other contentions, it is urged that the Juvenile Act provides a procedure criminal in its nature by which a minor may not be committed to a state institution without being accorded a jury trial. Acts by various of the legislatures in the different states have been passed, having for their object the humanitarian purpose of providing a procedure by which incorrigible minors or those committing crime might be saved from the stigma of conviction and placed under probation with individuals or in institutions where they would receive corrective care and training in useful trades or occupations. These acts have always been sustained, and the summary procedure therein provided for approved as not being a procedure which would effect a criminal conviction, but rather one providing guardianship. Under this construction it has been repeatedly held that no infringement of constitutional rights was worked because the accused was not given a right to trial by jury—that orders of commitment in such cases were not for the purpose of inflicting punishment, but for the purpose of providing suitable guardianship, either by individuals or under the official

supervision of the superintendents of state schools. We think it unnecessary to cite authorities to this point, for the proposition declared has been thoroughly established in a number of the states where such laws have been tested by appeal and otherwise.

Another of the points advanced on behalf of appellant is, to our minds, of sufficient gravity to justify a reversal of the judgment. The Juvenile Act provides that it shall be made to apply to certain persons under the age of twenty-one years. A description of such persons is found in thirteen subdivisions which immediately follow. Subdivision 13 declares that a person within the age mentioned, "who violates any law of this state or any ordinance of any town, city, county, or city and county of this state defining crime," shall be subject to the provisions of the act. Procedure for the issuance of a citation to the parent and guardian, requiring the production of a minor complained against, follows. A hearing is provided to be had and authority is given to the judge of the juvenile court to declare a minor complained against to be a ward of the court. Section 8 of the act provides that when a person is so adjudged to be such ward, he may be committed to a home or to some reputable person, society, or corporation, or to the care of a probation officer. Subdivision "e" of section 8 provides that the court may, if the ward be a boy and over the age of sixteen years, commit him to the Preston School of Industry for the period of his minority. It is further provided that in lieu of such commitment, the court may admonish the person and dismiss the petition. Section 9b of the act provides as follows: "No ward of the juvenile court as defined in this act shall be taken from the custody of his parent or legal guardian, without the consent of such parent or guardian unless the court shall find such parent or guardian to be incapable of providing or to have failed or neglected to provide proper maintenance, training and education for said person; or unless said person has been tried on probation in said custody and has failed to reform, or unless said person has been convicted of crime by a jury, or unless the court shall find that the welfare of said person requires that his custody be taken from said parent or guardian."

It will be noted by the provisions of this section that where the parent or guardian of a minor is deprived of his or her

custody, certain findings must be made by the juvenile court. It is complained on this appeal that the court made no finding sufficient to satisfy either of the conditions enumerated in the section, and we think that the appellant is correct in that assertion. We have examined the record diligently, which covers the entire proceedings, both as to the documents filed, the records prepared, and testimony heard. As we view the provisions of the act, it is essential that the court make such findings as are required by section 9b and in writing. In section 16 of the same act it is provided: "The orders and findings, if any, of the superior court in all cases coming under the provisions of this act, shall be entered in a suitable book or books or other form of written record, to be kept for that purpose, and known as the 'juvenile court record,' and the court, when acting under this act, shall be called the 'juvenile court.'" The attorney-general concedes that if the proceeding under the Juvenile Act is to be regarded as criminal and the commitment of the minor is to be regarded as punishment for an offense, then there would be no escape from the first proposition made by appellant that the constitutional right to a trial by jury would be violated. However, the attorney-general's position (to which we agree) is that a formal guardianship by the state is provided for only. That being the true construction, the provisions of section 9b above quoted are harmonious to that end. In other words, there would be no excuse or reason for depriving a natural guardian, capable, able, and willing to train, care for, and educate the minor, of the custody of the minor, unless the court should determine that the welfare of the person required that his custody be taken away from the parent or guardian. The making of such a finding, we think, was essential to sustain a valid order of commitment, and that because of its absence the judgment should be reversed.

The judgment is reversed and the matter remanded to the juvenile court for rehearing.

Conrey, P. J., and Shaw, J., concurred.