[Civ. No 31836. Second Dist., Div. Five. Nov. 13, 1968.]

In re ADELE L., a Person Coming Under the Juvenile Court Law.

LELAND C. CARTER, as Probation Officer, etc., Plaintiff and Respondent, v. BENJAMIN L., Defendant and Appellant.

Waxman & Gross and Ben Waxman for Defendant and Appellant.

Harold W. Kennedy, County Counsel, for Plaintiff and Respondent.

STEPHENS, J.—This appeal is from a juvenile court judgment finding that the ''allegations of the petition filed October 31, 1966, are true and said petition is sustained; . . . and that minor comes within the provisions of section 600(a) of the Juvenile Court Law . . . [and] that minor is adjudged and declared a dependent child of the Court under Section 600(a) of the Juvenile Court Law; that custody of minor is taken from the parents and guardians and minor is committed to the care, custody and control of the Probation Officer for suitable placement. . . .''[1]

---

[1]Welfare and Institutions Code, section 600, subdivision (a): ''Any person under the age of 21 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may

 The appeal is from the judgment of declaration of dependency and from the order of disposition, and is taken by the father of the minor, who is an interested party in the proceedings.[2]

The evidence pictures a segment of the life of a 10-year old minor caught in the problems of a broken home.

Some time prior to October 27, 1966, the marriage of minor's mother and father had terminated in divorce. The minor's custody had been awarded to the mother in the judgment of divorce. On October 27, the mother, Jewell L., was in an intoxicated and hysterical state, and the home was in a dirty and cluttered condition. The minor was present. Upon investigation by proper authorities in response to a neighbor's complaints, the minor was taken to a juvenile facility, and the mother, to jail. These are the facts alleged in the petition of October 31. Following a detention hearing on November 1, 1966, held in accordance with sections 630 and 632 of the Welfare and Institutions Code,[3] the minor was placed with the father pending a full hearing on the petition which was set for December 1, 1966. On November 23, this placement was terminated and the minor was returned to a juvenile court facility. On November 28, a second petition relative to the minor was filed. This petition alleged a section 600, subdivision (a) (Welf. & Inst. Code) cause, stating that

adjudge such person to be a dependent child of the court: (a) Who is in need of proper and effective parental care or control and has no parent or guardian, or has no parent or guardian willing to exercise or capable of exercising such care or control, or has no parent or guardian actually exercising such care or control.''

[2]Welfare and Institutions Code section 679: ''A minor who is the subject of a juvenile court hearing and any person entitled to notice of the hearing under the provisions of Section 658, is entitled to be present at such hearing. . . .'' (A father and a mother are among those listed in section 656, subdivision (e).)

[3]Welfare and Institutions Code, section 630: ''(a) If the probation officer determines that the minor shall be retained in custody, he shall immediately file a petition pursuant to Section 656 with the clerk of the juvenile court who shall set the matter for hearing on the detention hearing calendar. . . . The probation officer shall thereupon notify a parent or guardian of the minor of the time and place of such hearing. Such notice may be given orally. . . .''

Welfare and Institutions Code, section 632: ''Unless sooner released, a minor taken into custody under the provisions of this article shall be brought before a judge or referee of the juvenile court for a hearing (which shall be referred to as a 'detention hearing') to determine whether the minor shall be further detained, as soon as possible but in any event before the expiration of the next judicial day after a petition to declare such minor a ward or dependent child has been filed. If the minor is not brought before a judge or referee of the juvenile court within the period prescribed by this section, he shall be released from custody.''

the father, on November 23, 1966, in violation of the court's specific direction to avoid such comments, made derogatory remarks about the mother. Both petitions came on for hearing on December 1, 1966, and both the mother and father were given notice of the hearing, in compliance with sections 656, subdivision (e) and 658 of the Welfare and Institutions Code.[4] At time of hearing, the second petition (that concerning conduct of the father) was dismissed. The correctness of the dismissal is apparent, whether or not the allegations therein could have been established.[5] The hearing on the first petition (that concerning the conduct of the mother) was completed, and the minor was taken from the custody of the parents and declared to be a dependent child. (Welf. & Inst. Code, § 726.) It is from this finding and order that the father appeals.[6]

The first contention is that "[t]he court had no jurisdiction

[4]Welfare and Institutions Code, section 656, subdivision (e): "A petition to commence proceedings in the juvenile court to declare a minor a ward or a dependent child of the court shall be verified and must contain: . . . . (e) The name or names and residence address, if known to petitioner, of all parents and guardians of such minor. If there is no parent or guardian residing within the State, or if his place of residence is not known to petitioner, the petition must also contain the name and residence address, if known, of any adult relative residing within the county, or, if there be none, the adult relative residing nearest to the location of the court."

Welfare and Institutions Code, section 658 as of date of these proceedings: "Upon the filing of the petition, the clerk of the juvenile court shall issue a notice, to which shall be attached a copy of the petition, and he shall cause the same to be served upon the minor, if the minor is 14 or more years of age, and upon each of the persons described in subsection (e) of Section 656 whose residence addresses are set forth in said petition and thereafter before the hearing upon all such persons whose residence addresses become known to the clerk."

[5]The probation officer had the temporary custody of the minor. The placement of the minor with the father during this interim awaiting hearing was not a recognition of any right of custody in the father. "An officer who takes a minor into temporary custody under the provisions of Section 625 shall thereafter proceed as follows: . . . . (c) He may take such minor without unnecessary delay before the probation officer of the county in which such person was taken into custody, or in which such person resides, or in which the acts take place or the circumstances exist which are alleged to bring the minor within the provisions of Sections 600, 601, or 602, and deliver the custody of such minor to the probation officer. . . ." (Welf. & Inst. Code, § 626, subd. (c).)

[6]We recognize that during the period of juvenile court jurisdiction, that court has exclusive jurisdiction over matters of custody and support of the minor. (*Slevats* v. *Feustal*, 213 Cal.App.2d 113, 117 [28 Cal.Rptr. 517]; *In re Farley*, 162 Cal.App.2d 474, 478-479 [328 P.2d 230]; *In re Syson*, 184 Cal.App.2d 111, 117 [7 Cal.Rptr. 298].) This does not, however, divest the divorce court of its power to modify its custody order so that, upon termination of wardship, custody may be in accordance with such modified divorce decree order.

to adjudge the minor a ward of the court as a dependent child as it relied solely on the provisions of Welfare and Institutions Code section 600(a).''

■ We have noted that the appeal is from both the adjudication by the juvenile court declaring the minor a dependent child and from the order of disposition. The sequence of the court's orders was proper under the provisions of sections 701 and 702 of the Welfare and Institutions Code.■ ■ As to the propriety of the adjudication of dependency, we see no merit in the claim of error. Custody of the minor had already been taken from the father and placed in the mother by the divorce decree. At the time of the juvenile court hearing, the mother was the only person chargeable with the responsibility of care and custody of the minor. The proof of the allegations contained in the October 31 petition established that the mother failed in her responsibility, and on such finding the court had no alternative but to make the adjudicatory order it did. In fact, the father does not attack that portion of the finding by the juvenile court that the ''allegations of the petition filed October 31, 1966 are true and said petition is sustained; . . .'' ■ The general finding that all of the allegations contained in the petition are true is sufficient. (Welf. & Inst. Code, § 725, subd. (c)[8]; *In re Corrigan,* 134 Cal.App.2d 751 [286 P.2d 32].) The further adjudicatory order of dependency necessarily followed.

We then reach the more troublesome question raised on this appeal. There are actually two parts to this problem: Upon the facts before the juvenile court, (1) was the disposition order one which may be sustained; and (2) did the court

[7]Welfare and Institutions Code, section 701: ''At the hearing, the court shall first consider only the question whether the minor is a person described by Sections 600, 601 or 602, and for this purpose, any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; . . . .''

Welfare and Institutions Code, section 702: ''After hearing such evidence, the court shall make a finding, noted in the minutes of the court, whether or not the minor is a person described by Sections 600, 601, or 602. . . . If the court finds that the minor is such a person, it shall make and enter its findings and order accordingly and shall then proceed to hear evidence on the question of the proper disposition to be made of the minor. . . .''

[8]Welfare and Institutions Code, section 725, subdivision (c): ''After receiving and considering the evidence on the proper disposition of the case, the court may enter judgment as follows:. . . (c) If the court has found that the minor is a person described by Section 600, it may order and adjudge the minor to be a dependent child of the court.''

comply with section 726 of the Welfare and Institutions Code[9] in its findings?

The general finding as to the establishment of the allegations of the petition, while sustaining the adjudication of dependency, need not necessitate the removal of the minor from the physical custody of the parent. In the case of *In re Edwards*, 208 Cal. 725 [284 P. 916], it was recognized that there were two steps necessary: (1) adjudication; and (2) declaration of custody. In *Edwards*, the court said (at pp. 731-732): "An examination of the orders of the Juvenile Court fails to disclose any finding of said court which brings said minor or his parents within the provisions of this section [9b] of the act. *Without such a finding the court has no jurisdiction to take a minor who has been made a ward of the court from the custody of its parents. (In re Daedler*, 194 Cal. 320, 331 [228 P. 467].) It is not the policy of the Juvenile Court Law to relieve the parents of minors of the responsibility of caring for their minor children nor to deprive them of the right to their custody and control so long as the parents are capable of discharging such responsibility or of exercising said right of care and custody. This policy is clearly enunciated in section 9b of the Juvenile Court Law, and its terms must be strictly complied with before a court can take one who has been made a ward of the court from the custody of its parents." (Italics added.)

It may well be that the facts of the mother's intoxicated condition, her drinking habits, the turmoil caused by her temper, and the unkempt condition of the residence would justify a finding that the mother was "incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor," or, that "the welfare of the minor requires that his [her] custody be taken from his

[9]Welfare and Institutions Code, section 726: "In all cases wherein a minor is adjudged a ward or dependent child of the court, the court may limit the control to be exercised over such ward or dependent child by any parent or guardian and shall by its order clearly and specifically set forth all such limitations, but no ward or dependent child shall be taken from the physical custody of a parent or guardian unless upon the hearing the court finds one of the following facts:

"(a) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor.

"(b) That the minor has been tried on probation in such custody and has failed to reform.

"(c) That the welfare of the minor requires that his custody be taken from his parent or guardian."

[her] parent or guardian.''[10] The evidence referred to would not *demand* such a finding, however, as a matter of law.

■ The father here contends in substance that even if custody may be taken from the mother, custody may not be denied to him. The thrust of the argument is that the court did not and could not find that the minor has no parent or guardian actually exercising proper care and control. He urges that, in fact, custody and care had actually been exercised by him following the November 1 placement of the minor, and that the court lacked jurisdiction in that there was no petition alleging him to be unable, unfit, or unwilling as a parent to exercise proper care and custody of the minor. A separate petition is not necessary for the adjudication of dependency; nor is such a separate petition necessary for the proof of facts justifying a finding in accordance with section 726 of the Welfare and Institutions Code so long as there is a proper allegation contained in a petition before the court.[11] A short answer to that contention is that the provisions of section 600, subdivision (a) of the Welfare and Institutions Code are in the disjunctive. The petition was not drawn on the theory that the minor had ''no parent . . . willing to exercise or capable of exercising . . . care and control,'' but on the premise that the minor had ''no parent . . . actually exercising . . . care or control.''

The case of *In re Bullock,* 139 Cal.App. 664 [34 P.2d 769] has been cited by the appellant father as authority for his contention. We find that it is not such authority. There, the divorce decree awarded custody of the minor to the mother on condition that she place the minor in a military school; she appealed from the latter portion of the decree. The father sought and obtained a juvenile court declaration taking custody from the mother under the then provision of the code, which was substantially the same as that involved in the instant case. The juvenile court decree was reversed for lack of evidence to support the order, and the court ruled that the petition was jurisdictionally defective because it failed to allege that the father was incapable of or had failed or neglected to exercise proper control. That case was decided in 1934, at which time an appeal from a divorce decree awarding

[10] The facts as to the specific incident giving rise to the instant petition and those concerning prior and subsequent actions by the parents may be considered in passing on the capacity to provide proper parental control. (*In re Corrigan, supra,* 134 Cal.App.2d 751, 757.)

[11] The jurisdictional notices of the hearing on the petition of October 31, 1966, are not contested here.

custody stayed such order. (*Mancini* v. *Superior Court,* 230 Cal.App.2d 547 [41 Cal.Rptr. 213].) Thus, by virtue of the appeal from the custody order in *Bullock,* each parent continued to have a right of care and custody. Such is not true in the instant case, since the divorce decree had placed custody in the mother.

This does not resolve the problem, however. The mere fact that initial jurisdiction was proper does not make proper the exclusion of the parent from physical custody. Nor does the existence of a divorce decree giving custody of the minor to one parent necessarily exclude the other parent from physical custody of the minor under proper ''limitation of control.'' (See *In re Farley, supra,* 162 Cal.App.2d 474, 478-479.)

As we read section 726 of the Welfare and Institutions Code, absent facts establishing one of the conditions set forth in (a), (b), or (c) of that section, it is beyond the jurisdiction of the juvenile court to deny physical custody of a child to its parent. This physical custody is of a temporary or probationary nature, and is subject to a subsequent finding under part (b) where applicable.

The contention that there must be facts adduced which will support the taking of custody from both parents, in this case, is correct. In *In re Rauch,* 103 Cal.App.2d 690, 696 [230 P.2d 115], it was held that where the juvenile court record failed to disclose ''any substantial evidence that the minor's guardians [a guardianship existed in persons other than the father] were incapable of exercising proper parental control over the child or that they had failed to do so,'' an order declaring wardship (or dependency) could not be sustained. With this holding we are in complete agreement. Consequently, we have examined the record to ascertain whether there were *any* such facts upon which the juvenile court might rely to deny the father custody.

In the case before us, in addition to evidence sufficient to sustain the October 31 petition, there were facts adduced relative to the father's fitness.[12]

Thus we reach the crucial contention on this appeal: Did the court make the jurisdictional finding required by

---

[12]By stipulation, all probation reports in both a prior file re the minor and in the present file were admitted as evidence. In addition to the exclusion of custody by the father by virtue of the divorce decree, evidence was produced that a prior juvenile court declaration of wardship had existed as to this minor. We do not have the advantage of the knowledge of the contents of that file before us, as did the trial judge. Evidence that the divorce court had authorized the mother to remove the minor from the State of California was presented. Evidence was also

section 726 of the Welfare and Institutions Code supporting the taking of custody from the parents. No such finding is contained in the record. That such finding must be made is settled beyond question. As stated in *In re Macidon*, 240 Cal. App.2d 600, 607 [49 Cal.Rptr. 861], "the lack of evidence *or findings* to support grounds on which a minor who has been found to be a ward [or a dependent child] may be removed from the custody of his parents (§ 726 . . .) necessitates the reversal of such an order. (*In re Batey* (1960) 183 Cal.App. 2d 78, 80-81 [6 Cal.Rptr. 655]; *In re Pierce* (1932) 127 Cal. App. 773, 775-778 [16 P.2d 765]; *In re Brodie, supra,* 33 Cal.App. 751, 753-754 [166 P. 605]; and see *In re Edwards, supra,* 208 Cal. 725, 731-733.)" (Italics added.) See also *In re Bacon,* 240 Cal.App.2d 34, 59 [49 Cal.Rptr. 322].

Since we note that there are some facts which would support a finding required by Welfare and Institutions Code section 726, subdivisions (a) or (c), if that be the trial court's intent, we reverse and remand in the form adopted in *In re Pierce,* 127 Cal.App. 773 at pages 777-778 [16 P.2d 765]: "While the offense here charged, if found to have been committed by this minor, might well justify his removal from the custody of a parent by a juvenile court, if it appears from all of the circumstances that his welfare requires such action, the statute requires what must be found by the judge of the juvenile court before this may be done. If the facts justify the required finding, the making thereof is a simple matter, and in no way opens the door to those technicalities and formalities in juvenile court proceedings, which the entire spirit and purpose of that act demand should be kept therefrom."

The judgment is reversed.

Kaus, P. J., and Aiso, J., concurred.

presented by the mother against the father "[t]hat for twelve years off and on periodically I was beaten by this man. I have had a broken arm, a broken rib. I have had him pour hot boiling water on me. I have heard him use the foulest language in front of my daughter [the minor here] . . . . Now [the father] . . . drinks all the time . . . He drinks wine. . . . The child knows this I am sure." And the probation report dated November 18, 1966 disclosed that "[t]he Parents came before the Divorce Court in early 1965 and on April 2, 1965, appeared before Judge Matthews [juvenile court hearing officer] at which time she ordered a petition filed and released the minor to her mother with no visitation by the father. She indicated that both parents were unfit in her eyes. . . . The case indicates the father was on probation for ten years and that his probation officer said he lived affluently and felt there was much subterfuge. His criminal record includes eighteen counts dating from January of 1930 to January of 1965 and the charges were usually extortion, grand theft, or larceny by trickery. The father has used nine aliases. He was charged in January of 1965 with not keeping up his child support payments."