[Crim. No. 27673. Second Dist., Div. Four. Sept. 2, 1976.]

In re LAWRENCE B., a Person Coming Under the Juvenile Court Law.
CLARENCE E. CABELL, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
LAWRENCE B., Defendant and Appellant.

## COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Owen Lee Kwong, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, Acting P. J.**—Appellant was duly charged, by a petition in the juvenile court, with being a person described in section 602 of the Welfare and Institutions Code, by reason of having committed two acts of rape, in violation of subdivision 2 of section 261 of the Penal Code, and with having committed an act of kidnaping in violation of section 207 of the Penal Code. After a hearing under section 725 of the Welfare and Institutions Code, the allegations of the petition were found to be true.[1] At the disposition hearing, held under section 726 of that code, the court committed appellant to the Youth Authority. The pertinent part of the order of commitment reads as follows:

"The Court finds that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefitted by the reformatory educational discipline or other treatment provided by the Youth Authority. The Court finds that the minor comes under the provisions of Sec. 726, a & c W/C Code."

We hold that an order, couched only in such conclusionary terms, does not support a commitment to the Youth Authority.

While a juvenile court judge has discretion concerning the disposition to be ordered in a section 602 case, that discretion is not unlimited. The guidelines are spelled out in section 726 of the Welfare and Institutions Code, as follows:

"In all cases wherein a minor is adjudged a ward or dependent child of the court, the court may limit the control to be exercised over such ward or dependent child by any parent or guardian and shall by its order clearly and specifically set forth all such limitations, but no ward or dependent child shall be taken from the physical custody of a parent or guardian unless upon the hearing the court finds one of the following facts:

"(a) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor.

"(b) That the minor has been tried on probation in such custody and has failed to reform.

---

[1] The third (kidnaping) count was dismissed at the time of the dispositional hearing.

"(c) That the welfare of the minor requires that his custody be taken from his parent or guardian."

(1) At the time herein involved, the mere fact that a minor has committed a serious felony was not, in and of itself, a ground for a Youth Authority commitment.[2]

■ (2) It is the mandate of section 726 that a commitment to the Youth Authority be made only as a last resort when the lesser remedies of probation or juvenile camp placement have failed or clearly are inappropriate. As the Supreme Court said in *In re Aline D.* (1975) 14 Cal.3d 557, at page 564 [121 Cal.Rptr. 816, at page 820, 536 P.2d 65, at page 69]: "As is evident from the applicable statutes, 'Commitments to the California Youth Authority are made only in the most serious cases and only after all else has failed.' (Thompson, Cal. Juvenile Court Deskbook, § 9.15, p. 123.) This concept is well established and has been expressed by the CYA itself. In light of the general purposes of juvenile commitments expressed in Welfare and Institutions Code section 502, discussed above, ' . . . commitment to the Youth Authority is generally viewed as *the final treatment resource* available to the juvenile court and which least meets the description in the above provision [§ 502]. Within the Youth Authority system, there is gathered from throughout the State the most severely delinquent youths which have exhausted local programs.' (Italics added; California Youth Authority, Criteria and Procedure for Referral of Juvenile Court Cases to the Youth Authority (1971) p. 1.)"

■ On a record containing no express findings indicating why or how the trial court concluded that the conditions of subdivisions (a) and (c) of section 726 had been met, it was error to order a Youth Authority commitment.[3]

The order appealed from is reversed.

Dunn, J., concurred.

---

[2]"Likewise it is error to commit the minor merely because of the gravity of the crime. Such order would in effect be punitive. Juvenile court authorities are not designed to punish. (*In re Gault,* 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]; *In re William M.,* 3 Cal.3d 16, 30 [89 Cal.Rptr. 33, 473 P.2d 737]; *In re Steven C.,* 9 Cal.App.3d 255, 264-265 [88 Cal.Rptr. 97].)" (See *In re J. L. P.* (1972) 25 Cal.App.3d 86, 89 [100 Cal.Rptr. 601, 603].)

[3]"Furthermore, the court did not indicate the basis for its determination that appellant be removed from the custody of his parents; no showing was made of abuse or neglect by

**JEFFERSON (Bernard), J.**—I dissent.

The majority holds that the juvenile court's order committing the minor to the Youth Authority was invalid for a *lack of express findings* to support the order of commitment. The court's findings were as follows: "THE COURT FINDS: [¶] Welfare of minor requires that custody be taken from parents or guardians. [¶] The Court finds that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefitted by the reformatory educational discipline or other treatment provided by the Youth Authority. The Court finds that the minor comes under the provisions of Sec. 726 a & c WIC Code."

The majority concludes that the above findings are couched only in conclusionary terms and do not support an order of commitment to the Youth Authority.

There is no disagreement over the provisions of Welfare and Institutions Code section 726, the governing statute that sets forth the conditions under which a ward of the juvenile court may be removed from the physical custody of his parents. Section 726 provides, in relevant part, that "no ward or dependent child shall be taken from the physical custody of a parent or guardian unless upon the hearing the court finds one of the following facts: [¶] (a) That the parent or guardian is incapable of providing or has failed or neglected to provide proper maintenance, training, and education for the minor. [¶] (b) That the minor has been tried on probation in such custody and has failed to reform. [¶] (c) That the welfare of the minor requires that his custody be taken from his parent or guardian."

The majority holds that, in order for a Youth Authority commitment to be valid, the record of proceedings in the juvenile court must contain *express* findings indicating why or how the trial court concluded that the conditions of subdivisions (a), (b) or (c) of section 726 have been met.

I know of no judicial authority for the majority's assertion that a finding of the juvenile court judge, made in the language of Welfare and

the parents. While Welfare and Institutions Code section 726 provides no criteria for determining when the welfare of the minor requires that he be removed from the custody of his parents, it is clear that there must be some facts and evidence to support this finding. (*In re Adele L.*, 267 Cal.App.2d 397, 406 [73 Cal.Rptr. 76].)" (See *In re J. L. P.*, 25 Cal.App.3d 86, 90 [100 Cal.Rptr. 601, 603].)

Institutions Code section 726, subdivisions (a), (b) or (c), is insufficient as a finding to support an order taking a minor from the custody of his parent or guardian and committing the minor to the Youth Authority. By its express terms, Welfare and Institutions Code section 726 requires a finding *only* in the language of the statute.

The majority exalts form over substance in holding that the juvenile court judge's finding in the language of subdivisions (a), (b) or (c) of section 726 of the Welfare and Institutions Code is a mere conclusionary statement.

Since the language of section 726 is clear and unambiguous, there is no basis for a judicial interpretation of the statute that requires the juvenile court judge to make a finding *other than* a finding in the exact language of the statute itself. Additional, express findings are neither mandated by any provision of the State of California Constitution, nor the United States Constitution, nor by any section of the Welfare and Institutions Code, nor by the decisional law of this state. An appellate court ought not, by *judicial fiat,* interpret the plain and unambiguous language of Welfare and Institutions Code section 726 as requiring anything additional to what the statute itself explicitly requires.

The majority opinion seems to rely upon the cases of *In re Aline D.* (1975) 14 Cal.3d 557 [121 Cal.Rptr. 816, 536 P.2d 65]; *In re J. L. P.* (1972) 25 Cal.App.3d 86 [100 Cal.Rptr. 601] and *In re.Adele L.* (1968) 267 Cal.App.2d 397 [73 Cal.Rptr. 76], for its view that the juvenile court judge must make *express* findings that are more detailed than the exact words of the various subdivisions of Welfare and Institutions Code section 726. But none of these cases so holds.

The majority relies upon *In re Aline D.* as standing for the proposition that it is the mandate of Welfare and Institutions Code section 726 that a commitment of a minor to the Youth Authority is to be made only as a last resort when the lesser remedies of probation or juvenile camp placement have failed or clearly are inappropriate. But the question before the court in *In re Aline D.* was whether the requirement of Welfare and Institutions Code section 734 had been satisfied. Section 734 provides: "No ward of the juvenile court shall be committed to the Youth Authority unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory

educational discipline or other treatment provided by the Youth Authority." The Youth Authority commitment in *In re Aline D.* was reversed because the minor there involved was committed with the record reflecting an expressed doubt of the court that the minor would benefit from such a commitment. The court stated: "Nevertheless, under the present statutory scheme, supported by sound policy considerations, a commitment to CYA must be supported by a determination, based upon substantial evidence in the record, of probable benefit to the minor. The unavailability of suitable alternatives, standing alone, does not justify the commitment of a nondelinquent or marginally delinquent child to an institution primarily designed for the incarceration and discipline of serious offenders." (*In re Aline D., supra,* 14 Cal.3d 557, at p. 567.)

In the case at bench we are not dealing with the commitment of a nondelinquent or marginally delinquent child to an institution designed for serious offenders. On the contrary, we are dealing with a minor who committed two acts of rape. As the majority points out, I fully recognize that the fact that a minor has committed a serious felony is not, in and of itself, a ground for Youth Authority commitment since such a commitment would be punitive in effect. As contrasted with the situation in *In re Aline D.,* the commitment in the case at bench fully complied with the mandate of Welfare and Institutions Code section 734. The court's finding in the case at bench was in accord with the requirements of section 734: "The Court finds that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority."

The case of *In re Aline D.* does not deal at all with the question of what are appropriate findings to be made under Welfare and Institutions Code section 726, nor does *In re Aline D.* impose any requirements upon the juvenile court judge that he make specific express findings under Welfare and Institutions Code section 734 in addition to that specified by the language of the section itself. All that *In re Aline D.* holds is that, as required by section 734, an order of commitment to the California Youth Authority "must be supported by a determination, based upon *substantial evidence in the record,* of probable benefit to the minor." (*In re Aline D., supra,* 14 Cal.3d 557, at p. 567.) (Italics added.)

If the majority is correct in its view that the juvenile court judge must make *express findings* under Welfare and Institutions Code section 726,

similar express findings would seem to be required under Welfare and Institutions Code section 734. But since the Supreme Court in *In re Aline D.* does not impose a requirement of findings beyond the language of section 734, the majority's reliance upon *In re Aline D.,* in requiring express findings under section 726, simply lacks any justification whatever.

In the *In re J. L. P.* case, the juvenile court's order was reversed because the juvenile court judge refused to consider evidence relevant to appropriate disposition. The appellate court's order of remand stated "that the matter be remanded to the superior court sitting as the juvenile court to consider evidence as to the appropriate disposition of appellant." (*In re J. L. P., supra,* 25 Cal.App.3d 86, at p. 90.) This remand is not based on any inadequacy of findings.

The case of *In re J. L. P.,* therefore, cannot be construed as requiring any express finding apart from, or different than, the language of section 726 itself. That *In re J. L. P.* supports the view that *no additional* express finding is required is found in this statement: "In determining disposition, section 731 gives the court authority to commit the minor to the Youth Authority, but section 726 makes it mandatory prior to a commitment that *the court find* (1) the parent or guardian is incapable of caring for the minor, or (2) that the minor has been tried on probation and failed to reform, or (3) that the welfare of the minor requires that he be taken from the custody of the parent or guardian." (*In re J. L. P., supra,* 25 Cal.App.3d 86, at p. 89.) (Italics in original.) It is to be noted that the wording contained in subdivisions (1), (2) and (3) of the quoted language is practically the verbatim language found in subdivisions (a), (b) and (c) of section 726.

Finally, in the *In re Adele L.* case, the finding of the juvenile court judge was simply that the allegations of the petition were sustained and that the minor came within the provisions of section 600, subdivision (a), of the Juvenile Court Law. The order was then made that custody of the minor be taken from the parents. The lower court order in *In re Adele L.* was reversed because there was *no finding* in terms of the language, or otherwise, of section 726 of the Welfare and Institutions Code. But the *In re Adele L.* court did not, however, either by dictum or holding, state that a finding would be insufficient if it simply quoted the language of one of the subdivisions of section 726.

It is to be noted that the majority's holding regarding the nature of findings required by Welfare and Institutions Code section 726 is inconsistent with the judicial interpretation of a comparable section of the Juvenile Court Law, to wit, section 707 of the Welfare and Institutions Code. Section 707 deals with certification of a minor by the juvenile court to the superior court for criminal prosecution as an adult. Section 707 provides for certification of a minor to the superior court for prosecution when the juvenile court makes a finding that the minor is not a fit and proper subject to be dealt with under the Juvenile Court Law. Such a finding may be made when substantial evidence has been adduced to support a finding that the minor was 16 years of age or older at the time of the alleged commission of the offense charged and "that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court, . . ." (Welf. & Inst. Code, § 707.) Not being amenable to the care, treatment and training program available through the facilities of the juvenile court constitutes the basis for the juvenile court's determination that a minor is not a fit and proper subject for treatment as a juvenile. (See *Donald L.* v. *Superior Court* (1972) 7 Cal.3d 592 [102 Cal.Rptr. 850, 498 P.2d 1098]; *Jimmy H.* v. *Superior Court* (1970) 3 Cal.3d 709 [91 Cal.Rptr. 600, 478 P.2d 32].)

In *People* v. *Allgood* (1976) 54 Cal.App.3d 434 [126 Cal.Rptr. 666], defendant sought to get the appellate court to interpret Welfare and Institutions Code section 707 as requiring the juvenile court to make express findings that it has considered and rejected all treatment alternatives available under the juvenile court program as a basis for superior court certification. The *Allgood* court's reply to this suggestion was that "[s]ection 707 does not require an express finding on each possible treatment plan. [Citation.] The court's determination that the minor is not a fit and proper person to be dealt with under the juvenile court law carries with it the *implied* finding that he is not amenable to the care, treatment and training program available through the facilities of the juvenile court. [Citations.]" (*Allgood, supra,* 54 Cal.App.3d 434, at p. 447.) (Italics added.)

In 1975, the Legislature amended Welfare and Institutions Code section 707 to require the juvenile court to base its conclusion that the minor would not be. amenable to the care, treatment and training

program available through the facilities of the juvenile court, upon an evaluation of the following criteria: "(a) The degree of criminal sophistication exhibited by the minor. [¶] (b) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction. [¶] (c) The minor's previous delinquent history. [¶] (d) Success of previous attempts by the juvenile court to rehabilitate the minor. [¶] (e) The circumstances and gravity of the offense alleged to have been committed by the minor." The amended section 707 then provides that "[a] determination that the minor is not a fit and proper subject to be dealt with under the juvenile court law may be based on any one or a combination of the factors set forth above, *which shall be recited in the order of unfitness.*" (Italics added.)

The 1975 amendment to Welfare and Institutions Code section 707 establishes a legislative policy that, under section 707, certain listed factors are to be set forth as a part of the court's order of unfitness. But no similar amendment has been made to section 726.

The majority advances no sound reason why, in connection with Welfare and Institutions Code section 726, the decisional law should impose stringent requirements with respect to *required findings* when the Legislature has seen fit *not* to impose such requirements in connection with section 734, while it has done so with respect to section 707 of the same code.

In the case at bench, therefore, there was no defect in the juvenile court judge's findings.

The majority opinion does a distinct disservice to juvenile court judges in holding that some express findings must be made apart from, or in addition to, those authorized by the clear and unambiguous language of section 726 of the Welfare and Institutions Code. Even assuming that the appellate court has jurisdiction to require such express findings, such a requirement should not be imposed unless the appellate court is willing to specify some guidelines for the juvenile court judge to follow in making findings such as the Legislature did in amending section 707. The majority does not do this, however, but simply rests its decision on the *unsupported statement* that express findings are required.

If the decisional law is to create a new rule with respect to the necessity of *express* findings under the circumstances presented, it should be accomplished by action of the California Supreme Court and not by action of the Court of Appeal. I would affirm the juvenile court's order committing the minor to the California Youth Authority.

A petition for a rehearing was denied September 23, 1976, and respondent's petition for a hearing by the Supreme Court was denied November 24, 1976. Clark, J., was of the opinion that the petition should be granted.