[Crim. No. 31458. Second Dist., Div. Four. June 16, 1978.]

In re DARRYL T., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
DARRYL T., Defendant and Appellant.

**COUNSEL**

Ruth Ohanessian, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Roger W. Boren, Penina S. Van Gelder, Robert F. Katz and Carol Slator Frederick, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—A petition was filed in the juvenile court charging Darryl T., a minor 17 years of age, with the commission of various criminal offenses. Count I charged the commission of robbery on January 14, 1977, in violation of section 211 of the Penal Code. In counts II and III it was alleged that the minor committed the offense of robbery and assault with a deadly weapon on January 21, 1977. The same victim was named in counts II and III. In counts IV and V, it was alleged that the minor, on January 29, 1977, committed the offenses of robbery and kidnaping upon Elwain Steinkamp, in violation of Penal Code sections 211 and 207, respectively. In counts VI and VII it was alleged that, on February 4, 1977, the minor committed upon Archie Coleman Calkins the two offenses of robbery and kidnaping in violation of Penal Code sections 211 and 207, respectively.

The minor's motion to suppress evidence was denied. Thereafter, the minor admitted the allegations in counts II and VI, charging robberies committed on January 21, 1977, and February 4, 1977, respectively. The

court declared the minor to be a ward of the juvenile court and committed the minor to the California Youth Authority.

The minor appeals from these orders of the juvenile court. The minor makes two contentions on this appeal. It is contended that the trial court committed an abuse of discretion in committing the minor to the Youth Authority. The second contention is that the court erred in fixing a maximum term of confinement without giving the minor the benefit of Penal Code section 213.

■ We start with the well settled premise that the type of disposition made by the juvenile court is within the sound discretion of that court. In reviewing a juvenile court's disposition—whether it be a commitment to the California Youth Authority or a disposition of a less serious nature—the appellate court must indulge in all reasonable inferences from the evidence and the record to support the action of the juvenile court. (*In re Michael R.* (1977) 73 Cal.App.3d 327 [140 Cal.Rptr. 716]; *In re Willy L.* (1976) 56 Cal.App.3d 256 [128 Cal.Rptr. 592].) An order of disposition, made by the juvenile court, may be reversed by the appellate court only upon a showing of an abuse of discretion. (*In re Dale S.* (1970) 10 Cal.App.3d 952 [89 Cal.Rptr. 499]; *In re Clarence B.* (1974) 37 Cal.App.3d 676 [112 Cal.Rptr. 474].)

It appears that the robbery offenses involved were basically purse snatches committed by the minor and another by threatening the victims with a knife.

At the disposition hearing, two school officials were called as witnesses. One was from the minor's junior high school and the other was from the minor's high school. Each testified that the minor's conduct was exemplary and the minor's grades ranked in the upper one-third of the school. It was indicated that the minor had qualified for admission to college and financial arrangements were being sought to insure his attendance. The probation officer testified and reported that the minor had never come into contact with law enforcement personnel until the present offenses occurred. Although the probation officer testified that the minor Darryl did not appear "to be highly delinquently oriented," he nevertheless recommended Youth Authority commitment, rather than an alternative disposition.

The major thrust of the minor's contention in the case at bench is that the juvenile court referee failed to follow the premise that a Youth

Authority commitment is a matter of last resort for the disposition of a minor and that there must be a showing that other alternative dispositions were either not feasible or not available. The minor also urges that the juvenile court referee used inappropriate criteria and based the commitment upon the *sole* factor of the seriousness of the offenses and the need to punish the minor for his law violations.

The minor Darryl urges that the case of *In re Michael R.* (1977) 73 Cal.App.3d 327 [140 Cal.Rptr. 716], mandates that we hold that the juvenile court referee abused his discretion in making a California Youth Authority commitment. There is some similarity between the *Michael R.* case and the case at bench. In the *Michael R.* case, the court held that the juvenile court had abused its discretion in committing a 15-year old minor to the Youth Authority without considering, and then rejecting as inappropriate, less strict alternatives. The minor in *Michael R.* had discharged a firearm at an inhabited dwelling house. Although this was the minor's first appearance in juvenile court, he had a history of failing grades, unsatisfactory working habits, excessive truancy and association with other students who were defiant of authority. A review of the evidence before the court at the disposition hearing led the *Michael R.* court to conclude that the juvenile court had based its decision "on the nature or gravity of the offense." (*Michael R., supra,* 73 Cal.App.3d 327, 337.)

"While the language of *Aline D.* that California Youth Authority commitment is 'a last resort' (14 Cal.3d [557] at p. 564 [121 Cal.Rptr. 816, 536 P.2d 65]) does not mandate a mechanical lock-step progression through each possible disposition, it requires that the *rejection* of lesser remedies be supported by evidence on the record of their inappropriateness necessitating use of the California Youth Authority 'final treatment resource.' (*Id.*) In view of the lack of evidence suggesting unsuitability of the programs and treatment available at the county probation camps, the court could not reasonably conclude that a California Youth Authority commitment was necessary, let alone beneficial." (*In re Michael R., supra,* 73 Cal.App.3d 327, 336-337.) (Italics added.)

It is to be noted that in *In re Bryan* (1976) 16 Cal.3d 782, 788 [129 Cal.Rptr. 293, 548 P.2d 693], our high court reiterated its view set forth in *Aline D.* that "[c]ommitment to the Youth Authority is the placement of last resort for juvenile offenders."

In seeking to support the referee's disposition in the case at bench, the People rely upon *In re Willy L.* (1976) 56 Cal.App.3d 256 [128 Cal.Rptr. 592]. Thus the People point out that the minor Darryl is mentally bright, as was the minor in *Willy L.* But this is about the only element of similarity of any significance between the instant case and that of *Willy L.*

In *Willy L.*, the probation officer characterized Willy's conduct as a " 'serious pattern of delinquent behavior.' " (*Willy L., supra,* 56 Cal.App.3d 256, 263.) On the other hand, the probation officer in the instant case characterized Darryl as *not* appearing to be highly delin- quently oriented.

The *Willy L.* court observed: "We believe that a minor who partici- pates in a large scale burglary and uses the proceeds from such a burglary to set himself up in drug dealing is so criminally oriented as to make it highly unlikely that he will be further corrupted by incarceration in the California Youth Authority." (*Willy L., supra,* 56 Cal.App.3d 256, 263.) The minor Darryl's criminality cannot be described in any such terms.

Again, the *Willy L.* court described Willy as "a calculating, sophisticat- ed youth who is described in the probation report as a *leader* of a delinquent peer group with a reputation as a 'big drug dealer.' " (*Id.,* at p. 264.) (Italics added.) But in the instant case Darryl's criminal conduct, though of a serious nature, can only be described as probably impulsive and the product of poor peer associations.

Another distinction between the minor Willy in the *Willy L.* case and the minor Darryl in the case at bench—which is of some significance—is that Darryl had no prior police contacts, while Willy was no stranger to delinquent proceedings, having committed three prior offenses—two petty thefts and possession of marijuana. Willy was processed informally for these three offenses without a formal petition having been filed in the juvenile court.

We note that, in *Willy L.,* the court had good reason for rejecting the probation officer's recommendation that Willy be sent to camp. The juvenile court judge in *Willy L.* concluded that a camp setting would tend to offer Willy "opportunities to continue his 'salesmanship' of controlled substances in relative security." (*Willy L., supra,* 56 Cal.App.3d 256, 265.) No such reasoning for rejecting a possible camp commitment existed in the instant case.

The probation officer's recommendation that Darryl be committed to the Youth Authority rather than receive some other disposition was based primarily on the view that Darryl was a threat to the safety of the community based *solely* on the nature of the offenses committed. Yet the probation officer admitted that he had made no effort to obtain a psychiatric evaluation of Darryl from the probation psychiatrist or otherwise. The probation officer also admitted in his testimony that his recommendation for a Youth Authority commitment under which Darryl would receive 24-hour supervision in a custodial setting was based essentially on the gravity of the offenses committed—nothing else—thus disregarding all other considerations which might indicate substantially that Darryl was not a continuing danger to the community.

The record is clear that there was an absence of evidence cr any reasonable opinions as to why the minor Darryl, after leading an exemplary and law-abiding life until he became 17 years of age, would then become involved in serious criminal activity. Darryl's trial counsel urged the referee to send Darryl to the Youth Authority for a 90-day diagnostic study because of the absence of any reasonable explanation for his change of conduct. In reacting to this suggestion, the juvenile court referee expressed the opinion that it was not necessary to have an evaluation of Darryl's need, if any, for psychiatric help since everybody needs psychiatric counseling. This expression by the referee denotes a failure to consider that a psychiatric evaluation might be of assistance in determining an appropriate disposition.

As we review the record, a psychiatric evaluation of Darryl may have been of immeasurable help to the juvenile court in determining the appropriate disposition for Darryl, especially in view of the fact that the record is devoid of any indication of what caused or motivated Darryl to become involved in criminal conduct after living for 16 years without engaging in any delinquent conduct whatever.

In the instant case the juvenile court referee, without any evidence or other basis for his conclusion, stated that the reason Darryl failed to appreciate the consequences of his conduct was that Darryl knew that 17-year-old minors could commit multiple armed robberies and the juvenile court would simply send them home. The referee stated his opinion to be that "we have taught a whole generation of people by the leniency of the juvenile court and the failure of the juvenile court to face its responsibilities that armed robbery is not a serious offense, the consequences are not serious."

There is no justification for the juvenile court referee to set forth the view that the juvenile court as a whole has been lenient and has failed to face its responsibilities so that a whole generation of people have been led to believe that armed robbery is not a serious offense and that the consequences of committing such a crime are not serious. We consider the referee's remarks to constitute an irresponsible statement and an unwarranted indictment of the juvenile court system. If the referee had facts or studies to establish that any significant number of people consider that armed robbery committed by a juvenile was not deemed a serious offense nor its consequences serious by the juvenile courts of this state, he should have set forth those facts and studies as a part of the record in the instant case.

The referee then proceeded to state his views on the question of *punishment.* He stated: "We have been at this hearing for something like 45 minutes. Everybody in juvenile court seems to be afraid to mention that one word everybody has been thinking of but nobody has the guts to say, which is punishment. Nobody in juvenile court will use the word punishment, because it doesn't say we can punish in the Welfare and Institutions Code. I use the word punishment occasionally because I think we are interested in rehabilitating people, and I think that punishment is probably one of the most frequently used methods of rehabilitating people . . . . [¶] That is a word I am not afraid to use. I think that is what the probation officer, Mr. Jones, had possibly in mind, but he is afraid to use that word because it looks so bad in juvenile court. Punishment that is not sadistically imposed can be rehabilitative."

■ The task of the juvenile court is to administer the Juvenile Court Law as enacted by the Legislature. By design, the Legislature has seen fit to create a juvenile justice system in which *punishment* is *not* an element. Had the Legislature intended for "punishment" to be an aim of the juvenile justice system, in addition to "rehabilitation," it would have said so in the governing legislation. This is one of the distinctions made by the Legislature between the adult justice system and the juvenile justice system. Thus, Penal Code section 1170, subdivision (a)(1) (added by Stats. 1976, ch. 1139, § 273), provides, inter alia, that "[t]he Legislature finds and declares that the purpose of imprisonment for crime is *punishment.*" (Italics added.) No similar language is found in the Juvenile Court Law.[1]

---

[1]Section 202 of the Welfare and Institutions Code provides: "(a) The purpose of this chapter is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the state; to protect the public

In view of the legislation governing juvenile courts, no disposition of a minor's case can have punishment of the minor as *any* element of such disposition. It is well settled that a commitment to the California Youth Authority cannot validly be predicated *solely* on the ground that the minor has committed a serious offense. (*In re Lawrence B.* (1976) 61 Cal.App.3d 671 [132 Cal.Rptr. 599].) The rationale for this view is that "[s]uch order would in effect be punitive. Juvenile court authorities are not designed to punish. [Citations.]" (*In re J. L. P.* (1972) 25 Cal.App.3d 86, 89 [100 Cal.Rptr. 601].) A punitive commitment is "contrary to the rehabilitative purpose of the Juvenile Court Law." (*In re Michael R., supra,* 73 Cal.App.3d 327, 337.) The rehabilitative purpose of the Juvenile Court Law was set forth explicitly in *In re Aline D.* (1975) 14 Cal.3d 557, 567 [121 Cal.Rptr. 816, 536 P.2d 65], as follows: "Juvenile commitment proceedings are designed for the purposes of rehabilitation and treatment, *not punishment.*" (Italics added.)

■ There is a distinction between *confinement* and *punishment.* The disposition of a minor who has committed a violation of the criminal law may well include confinement, such as a commitment to a camp, juvenile home or the Youth Authority. But such confinement must be viewed as a component of rehabilitation and treatment. If its purpose is that of punishment, even in part, it constitutes a violation of the express design of the Legislature's enactment of the Juvenile Court Law and renders the disposition invalid.

If the Legislature had intended for the juvenile court to consider *punishment* of the minor as one of the criteria in determining a disposition for the minor, it would have so provided in section 202 of the Welfare and Institutions Code as it has so provided in section 1170 of the Penal Code for an adult who has committed a violation of the Penal Code.

■ In the case at bench, the record demonstrates that the referee used inappropriate criteria in committing the minor to the California Youth

---

from criminal conduct by minors; to impose on the minor a sense of responsibility for his own acts; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when necessary for his welfare or for the safety and protection of the public; and, when the minor is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents. This chapter shall be liberally construed to carry out these purposes. [¶] (b) The purpose of this chapter also includes the protection of the public from the consequences of criminal activity, and to such purpose probation officers, peace officers, and juvenile courts shall take into account such protection of the public in their determinations under this chapter."

Authority. The criteria used by the referee were solely the factors of the seriousness of the offenses committed by the minor and a disposition as punishment for the minor's violations of the criminal law, predicated on the unsupported assumption that the minor had committed the offenses out of a belief that the juvenile court did not consider the offenses serious and that no serious consequences would result from the acts committed. No effort was made by the referee to evaluate the appropriateness of other available alternative dispositions.

Since the order committing the minor to the California Youth Authority must be reversed, we need not consider the minor's contention relative to the maximum term of confinement imposed as a part of the referee's disposition order. No attack is made on the referee's findings and order adjudicating the minor to be a ward of the juvenile court.

The orders sustaining the petition with respect to two counts thereof and declaring the minor to be a ward of the juvenile court are affirmed. The disposition order committing the minor to the California Youth Authority is reversed with directions to the juvenile court to conduct a further disposition hearing or hearings consistent with this opinion.

**KINGSLEY, Acting P. J.**—I concur in the result. I do not read Justice Jefferson's opinion as restricting the power of the juvenile court to make such dispositional order as to it may seem appropriate after a full and due consideration of the minor's character and the alternatives available for his possible rehabilitation. The only restriction we impose on the court is that its disposition must clearly be oriented to rehabilitation and not to punishment.

**HUPP, J.,**\* Concurring and Dissenting.—I concur in the affirmance of the orders sustaining the petition, and in the reversal of the order committing the minor to the California Youth Authority, but dissent from the direction that the further disposition hearing be conducted in a manner "consistent with this opinion." Briefly, the order committing the minor to the Youth Authority cannot be sustained because the referee used "punishment" as a criteria in determining that the minor should be sent to the Youth Authority. As is thoroughly demonstrated by the majority opinion, present law does not allow punishment to be used as a basis for a juvenile court disposition. Since it is clear that the referee used incorrect

\*Assigned by the Chairperson of the Judicial Council.

criteria, the commitment must be reversed and a new disposition hearing held.

For the rest, I dissent. The majority opinion, to my mind, preempts the discretion which belongs to the juvenile court. It appears that the majority goes beyond insisting that the juvenile court use only adjudication factors allowed by law, and is saying that this minor may not be sent to the Youth Authority. The majority does say that "[w]e start with the well settled premise that the type of disposition made by the juvenile court is within the sound discretion of that court." In my opinion, we should stop with that premise and not exercise the discretion of the juvenile court for it. As described in the majority opinion, the minor was involved in a one man crime wave of serious crimes. The seriousness of the crimes may not be used, as the majority says, as the basis to send the minor to the Youth Authority as punishment, but the major deviation from social norms shown by the robberies and associated serious felonies may well show, with other evidence, that this boy needs more than camp to straighten him out. At least, if the juvenile court said so, I could not say that their discretion was abused, which is the test we are supposed to apply.

A petition for a rehearing was denied July 7, 1978, and respondent's petition for a hearing by the Supreme Court was denied August 24, 1978.