[Crim. No. 3448. Third Dist. Oct. 31, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. LARRY GENE HUTSON, Defendant and Appellant.

752

Willard Weddell, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Roger E. Venturi, Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—Defendant, 19 years old, pleaded guilty to three counts of manslaughter by vehicle and one count of violating Vehicle Code section 23101 (felony drunk driving). On appeal defendant urges that the court abused its discretion by sentencing him to state prison and refusing to refer him to the California Youth Authority for possible commitment to an institution of that agency.

Following the plea of guilty defendant applied for probation. The district attorney orally described the offense which brought defendant before the court. Defendant and two friends drank a bottle of whiskey. Defendant's car was parked at a service station on Watt Avenue, a north-south boulevard in the suburban area outside Sacramento. Defendant then entered his car and drove northward on Watt Avenue at speeds ranging between 70 and 120 miles per hour. At a cross boulevard, Marconi Avenue, defendant drove through a red traffic signal and continued to speed northward to Whitney Avenue, where he ran another red light and smashed into an automobile containing a mother and three daughters. The mother and two of the daughters, ages 6 and 9, were killed. The third daughter was seriously injured.

Defendant's blood had an alcohol content of .24 per cent.

After hearing these facts the trial judge remarked: "He's lucky he isn't charged with murder.... Well, I'll hear a probation report on this, but don't have any anticipation of probation. That's sufficient for me. I won't need any further facts. Evidently he had absolutely no regard for human life."

Defendant contends that these remarks demonstrate a prejudgment on the question of defendant's possible commitment to the Youth Authority and a refusal by the court to recognize the provisions of sections 1700 and 1731.5 of the Welfare and Institutions Code.*

At the time of these remarks there was no request before the court for reference to the Youth Authority. The judge's remarks were directed to the question of probation. ■ An applicant for probation has a right to have his application considered by the court. (*People* v. *Lopez*, 151 Cal.App. 2d 121, 123 [311 P.2d 11].) ■ The attack here, however, is not on the court's order denying probation; rather, the attack is aimed at the order denying reference to the Youth Authority. On the latter question, the judge's remarks did not demonstrate prejudgment, but only that the court was deeply impressed with the shocking character of defendant's crime. That factor is one which the court may consider in either connection, probation or Youth Authority reference.

---

*Welfare and Institutions Code, section 1700: "The purpose of this chapter is to protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found guilty of public offenses. To this end it is the intent of the Legislature that the chapter be liberally interpreted in conformity with its declared purpose." Welfare and Institutions Code, section 1731.5: "After certification to the Governor as provided in this article a court may refer to the authority any person convicted of a public offense who comes within all of the following description:

"(a) Is found to be less than 21 years of age at the time of apprehension;

"(b) Is not sentenced to death, imprisonment for life, imprisonment for 90 days or less, or the payment of a fine, or after having been directed to pay a fine, defaults in the payment thereof, and is subject to imprisonment for more than 90 days under the judgment;

"(c) Is not granted probation.

"If the authority believes that any person referred to it as provided in this section can be materially benefited by the procedure and discipline of the authority, and that proper and adequate facilities exist for the care of such person, it shall so certify to the court. The court shall thereupon commit said person to the authority."

Later, at the probation hearing and time fixed for sentence, there was a discussion of the probation officer's recommendation. Defendant's counsel, a member of the public defender's office, stated that he had received a copy of a probation report dated February 11 recommending reference to the California Youth Authority, but then had received a later report (apparently with the Youth Authority recommendation deleted). He stated his belief that there was legal cause why judgment of imprisonment should not be pronounced, that in view of the probation officer's original recommendation he was requesting that defendant be referred to the Youth Authority for possible acceptance by that agency. At this point the judge stated: "Mr. Murphy, you have been apprised of the fact that that recommendation has been changed at the direction of this Court." Upon counsel's request for a statement of the court's reasons for refusing reference to the Youth Authority, the court reviewed a portion of the report showing that in March 1961 defendant had injured two pedestrians in the operation of an automobile and had speeding convictions in February and June of 1961. The court stated: "He has absolutely no regard for human life when he gets in his automobile, and I don't propose he's going to get by with it." After defense counsel attempted to continue his argument that defendant should be committed to the Youth Authority the court stated: "I don't care to hear from you any further, Mr. Murphy; you are too insolent. He's going to prison, and you'll get a consecutive if you talk much more."

The surviving husband and father of the accident victims was in court. After imposing sentence on defendant the court turned to him and said: "Mr. DeMartin, there is nothing that this Court can do, unfortunately, that will ever restore this terrible loss you have suffered, sir, and I sympathize with you greatly." The court's remarks are assailed as indicative of a closed state of mind, which foreclosed consideration of defendant's eligibility for Youth Authority commitment.

■ Certification of youthful offenders to the California Youth Authority is discretionary with the trial court. (*People* v. *Binder*, 135 Cal.App.2d 662, 664-665 [288 P.2d 48].) ■ Abuse of the discretion may be reversed on appeal. (*People* v. *Doyle*, 108 Cal.App.2d 827, 828 [240 P.2d 40].) ■ As set forth in the decisions, the standard for exercise of that discretion is the offender's suitability for the

rehabilitative program of the Youth Authority as described in the Youth Authority Act, particularly sections 1700 and 1731.5 of the Welfare and Institutions Code. (*People* v. *Binder, supra,* 135 Cal.App.2d at p. 665; *People* v. *Doyle, supra,* 108 Cal.App.2d at p. 828; *People* v. *Walker,* 82 Cal. App.2d 196, 201-202 [185 P.2d 842].) Additionally, it may be suggested that the social interests usually involved in fixing sentence would play a part.

 The remarks made by the trial judge do not betoken a refusal to consider reference to the Youth Authority. The judge's direction, correct or incorrect, for deletion of the probation officer's original recommendation, demonstrates that the judge read the original report and disagreed with it. His references to defendant's prior offenses show that he had considered defendant's record as revealed by the probation report, an entirely proper matter to place on the scales. His remark to Mr. DeMartin demonstrates that he had considered the gravity and tragic consequences of the offense, also an appropriate weight in the scales. The judge's statements, taken as a whole, disclose a correct concept of the law and its application; thus his secondary remarks do not impeach his determination. (*People* v. *Lichens,* 59 Cal.2d 587, 590 [30 Cal.Rptr. 468, 381 P.2d 204].) In view of the factors which the trial court properly considered, we conclude that the court neither refused to exercise its discretion nor abused its discretion.

 Our decision is not intended to imply approval of the judge's action in directing the probation officer to delete the recommendation in his original report and to substitute a second report. Without delving into the status of a probation officer's report before it is officially filed, and considering the matter in the light of the probation officer's status as a public officer entitled to exercise independent discretion and judgment, we may assume that the action was error. There are two reasons why the assumed error was not prejudicial. First: The evidentiary or informational portions of the report were not changed, only the recommendation. (See *People* v. *Valdivia,* 182 Cal.App.2d 145, 149 [5 Cal.Rptr. 832].) The recommendation was not binding on the court in any event. (*People* v. *Johnson,* 106 Cal.App.2d 815, 816 [236 P.2d 190].) Second: In the case of adult offenders who are eligible for Youth Authority commitment, the report is not a statutory requirement. As a practical matter, trial judges use the report not only in considering probation but also, where

probation is denied, for guidance in considering referral to the Youth Authority. Neither the Youth Authority Act nor the Penal Code demands the preparation of a probation officer's report as a source of advice in exercising discretion under Welfare and Institutions Code section 1731.5. (See Pen. Code, § 1203.10; Code Civ. Proc., § 131.3.) Use of the report for the latter purpose is informal and optional. Since, for the latter purpose, the court could have dispensed with the report altogether, deletion of the recommendation did not deprive defendant of any legally recognized right.

Judgment affirmed.

Pierce, P. J., and Schottky, J., concurred.