[Crim. No. 23370. Second Dist., Div. Five. Mar. 1, 1974.]

In re CLARENCE B., a Person Coming Under the Juvenile Court Law.
KENNETH E. KIRKPATRICK, as Chief Probation Officer, etc., Plaintiff and Respondent, v.
CLARENCE B., Defendant and Appellant.

**COUNSEL**

Herbert F. Blanck, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Frederick R. Millar, Jr., and Theodora Berger, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**HASTINGS, J.**—On June 23 and July 18, 1972, two petitions were filed in the juvenile court alleging that defendant, Clarence B., came within the provisions of Welfare and Institutions Code section 602. The two petitions were consolidated and after a hearing, paragraphs II, IV, and VI of the second petition, alleging two violations of Penal Code section 261, subdivision 2 (rape) and one violation of Penal Code section 288a (oral copulation), were found to be true. The first petition and the remaining paragraphs of the second petition were dismissed. Defendant was declared a ward of the court under section 602 and committed to the California Youth Authority (CYA). An application for rehearing was denied. Defendant appeals from the judgment (order of commitment), contending he was denied his constitutional right to a jury trial; that the waiver by his counsel of his right to a jury trial was ineffective; that his counsel's failure to raise an alibi defense deprived him of his right to effective assistance of counsel; and that his commitment to the CYA was invalid.

On July 14, 1972, two 14-year-old girls accepted a ride from two young men. Later, defendant joined them, and one of the girls got into another automobile. The two cars then drove to a house in Altadena where both girls were raped by defendant, among others.

Defendant, testifying in his own behalf, stated that on the evening in question a friend drove to his home with two girls. Around 11 o'clock he left his house with his friends and told his aunt, Mrs. Breckenridge, that he was going to Pasadena. However, defendant denied actually going to either Pasadena or Altadena that night. Instead, he said that his friends had dropped him off at a girl friend's house where he then spent the entire evening.

Defendant contends that he should have been granted a jury trial. However, both before and after *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], California courts have uniformly held that a jury trial is not constitutionally required in juvenile court proceedings. (*In re Daedler* (1924) 194 Cal. 320, 332 [228 P. 467]; *In re Dennis M.* (1969) 70 Cal.2d 444, 456-457 [75 Cal.Rptr. 1, 450 P.2d 296] [by implication]; *In re T.R.S.* (1969) 1 Cal.App.3d 178, 182 [81 Cal.Rptr. 574]; *In re Joe R.* (1970) 12 Cal.App.3d 80, 84 [90 Cal.Rptr. 530].) *In re Steven C.* (1970) 9 Cal.App.3d 255, 260-261 [88 Cal.Rptr. 97], adhered to this rule holding that a different view was not compelled by *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]; California's constitutional guarantee of a jury trial under California Constitution, article I, section 7, has not yet been extended to juveniles. (*In re Daedler, supra.*)

Defendant, acceding that juvenile proceedings are civil rather than criminal in character, argues that juveniles should be accorded the same rights as adults are given in the involuntary civil commitment proceedings for narcotics addicts or potential narcotics addicts, for mentally disordered sex offenders, or for imminently dangerous persons. This argument, however, fails to recognize an important distinction. In involuntary commitment proceedings of adults, the status of an individual is determined, i.e., whether or not a certain person is an addict, mentally disordered sex offender, or an imminently dangerous person. Juvenile proceedings are involved with guilt, i.e., whether or not a minor has violated the law or has committed an act so as to bring the minor within Welfare and Institutions Code section 602. Insertion of the requirement of a jury trial in juvenile proceedings would result in placing the minor into the full adversary process and would put an end to an informal and private proceeding, which is necessary to accomplish the policies underlying the existence of the juvenile court. (*McKeiver* v. *Pennsylvania,* 403 U.S. 528 [29 L.Ed.2d 647, 91 S.Ct. 1976].)

Defendant relies heavily upon *In re Gary W.* (1971) 5 Cal.3d 296 [96 Cal.Rptr. 1, 486 P.2d 1201]. This case, however, dealt specifically with Welfare and Institutions Code sections 1800-1803, which permit the CYA to petition the committing court (either juvenile or superior) for an order directing the Youth Authority to retain control over the individual beyond the date upon which his release would otherwise be mandatory "if the ward is found to be physically dangerous to the public." Under these circumstances, the court found that the commitment of these adults as dangerous persons is sufficiently similar to the involuntary civil commitment of other adults so as to require that they receive the same protection as the other adults, that is, the right to a jury trial. The court, however, specified that its decision was limited to statutes dealing with civil *commitments* of *adults,* and stated that ". . . the commitment proceeding here applies only to *adults. It is in no way a juvenile proceeding,* nor is it an extension of a prior juvenile court proceeding. . . . [¶] Denial of the right to a jury trial to a person subject to commitment pursuant to section 1800 cannot, therefore, be predicated upon *any rational distinction which may be drawn between juveniles and other members of the public.*" (*Id.* at pp. 305-306. Italics added.)

Recognizing the difficulty in reconciling the two essential, but contradictory objectives of the juvenile court system (first, preserving the guarantee of due process; and second, establishing an informal court atmosphere so that potentially harmful effects of the proceedings are minimized and

the minor's receptivity to treatment is encouraged (*In re Dennis M., supra,* 70 Cal.2d 444, 452)), defendant asserts that the "answer to [this] dilemma" lies in the fact that the juvenile proceedings are bifurcated (See *In re J. L. P.,* 25 Cal.App.3d 86, 89 [100 Cal.Rptr. 601].) He argues that a jury should decide the determination of whether the facts of the case would support the jurisdiction of the juvenile court to declare wardship and the court then can determine the disposition and sentencing. Once a jury system, however, is adopted, even at the initial, fact-finding stage, it would still have the undesirable effect of introducing "a strong tone of criminality" into juvenile proceedings (*In re Steven C., supra,* 9 Cal.App.3d 255, 261) as well as depriving the minor of the other advantages now present in the juvenile system, i.e., privacy, informality and emphasis on rehabilitation.

Accordingly, in the absence of authoritative holdings directing the contrary, we accept the holdings of the foregoing cases.

■ Since, as discussed above, defendant has no constitutional right to a jury trial, the contention that his counsel ineffectively waived this right under *In re Tahl,* 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449], is without merit.

■ Defendant further contends that he was inadequately represented due to his "counsel's failure to raise an alibi defense." ■ In order to justify relief on the grounds of inadequate representation of counsel it must appear that counsel's lack of diligence reduced the trial to a "farce or a sham." (*People* v. *Ibarra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) "It is not sufficient to allege merely that the attorney's tactics were poor, or that the case might have been handled more effectively. [Citations.] Rather, the defendant must affirmatively show that the omissions of defense counsel involved a critical issue, and that the omissions cannot be explained on the basis of any knowledgeable choice of tactics." (*People* v. *Floyd,* 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464 P.2d 64].) ■ Moreover, defendant has the burden of establishing his allegation of inadequate representation "'not as a matter of speculation but as a demonstrable reality.'" (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].) ■ To establish his claim defendant cites his counsel's failure to call three witnesses, "who, in all probability, were prepared to testify in behalf of the minor" and to support his defense. However, a review of the record compels the conclusion that only by recourse to speculation and conjecture could it be said that this omission resulted in defendant's commitment. ■ The selection of potential witnesses is a legitimate tactical decision for the trial counsel to undertake, and it is a matter not ordinarily reviewable on appeal. (*People* v. *Floyd, supra,* 1 Cal.3d 694,

709-710.) ■ The record discloses that defendant's alibi defense was, in fact, brought to the court's attention by his very own testimony. His trial did not constitute "a farce or a sham." In fact, quite to the contrary, the record demonstrates that defendant was competently represented by counsel.

■ Lastly, defendant contends that section 734 of the Welfare and Institutions Code[1] provides no criteria for determining when the ward will be benefited" by a commitment to the CYA; that "the facts failed to show that the minor would be benefited by a commitment to the Youth Authority"; and that, therefore, his commitment was invalid. This contention is without merit. ■ It is well settled in California that when a public offense has been committed by a juvenile, certification of the juvenile to the CYA is within the sound discretion of the committing court, be it the juvenile court (Welf. & Inst. Code, §§ 731, 1736) or the superior court (Welf. & Inst. Code, § 1731.5). (See *In re Dale S.,* 10 Cal.App.3d 952, 957 [89 Cal.Rptr. 499]; *People* v. *Moran,* 1 Cal.3d 755, 762 [83 Cal.Rptr. 411, 463 P.2d 763]; *People* v. *Woolbert,* 232 Cal.App.2d 544, 547 [42 Cal.Rptr. 919].) ■ The decision of the juvenile or superior court may be reversed on appeal only upon a showing that the court abused its discretion in committing the minor to the CYA. (See *In re Dale S., supra,* at p. 957; *People* v. *Hutson,* 221 Cal.App.2d 751, 754 [34 Cal.Rptr. 790].) A reviewing court must indulge in all reasonable inferences to support the findings of the juvenile court, and such findings will not be disturbed on appeal when there is substantial evidence to support them. (*In re Schubert,* 153 Cal.App.2d 138, 143 [313 P.2d 968].)

Defendant erroneously argues that Welfare and Instituitons Code section 734 is "vague" and "provides no criteria" for the courts to properly commit a minor to the CYA. In *People* v. *Hutson, supra,* at pages 754-755, the court upheld, as a valid standard, similar criteria set forth in Welfare and Institutions Code section 1731.5. This section provides authority for the superior court to commit a minor convicted of a public offense (under certain specified conditions, i.e., age, probation status, and sentencing) if the Youth Authority ". . . believes that the person can be materially *benefited* by its reformatory and educational discipline . . . ." (Italics added.)

---

[1]Welfare and Institutions Code section 734 provides that: "No ward of the juvenile court shall be committed to the Youth Authority unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority."

From the record it is apparent that there was more than ample evidence to sustain the court's decision to commit the defendant to the CYA. He argues that the court made its determination "with nothing more than the probation officer's report." However, the court, in addition to referring to the probation report, stated that it had specifically read the police report and a statement as to the evidence. In any event, it was held in *People* v. *Sparks,* 262 Cal.App.2d 597, 601 [68 Cal.Rptr. 909], that probation reports "are a proper source of information for exercising discretion under section 1731.5," a statute analoguous to section 734.

Here, defendant was found to have committed rape and oral copulation. Moreover, his probation reports revealed the following "previous history": "4-22-70 — SHOPLIFTING . . . 7-8-70 — DRIVING WITHOUT OWNER'S CONSENT . . . 7-15-70 — DRIVING WITHOUT OWNER'S CONSENT . . . 8-1-70—DRIVING WITHOUT OWNER'S CONSENT . . . 12-6-70—POSSESSION OF A MARIJUANA CIGARETTE . . ."

In addition, defendant has appeared before the juvenile court seven times prior to 1972, and he could not adjust either in the community or home and "has not been able to make even minimal adjustment in the camp program and has not worked out in the placement program." The psychiatric diagnoses of 1969 and 1970, before the commission of the present offenses, recommended "[a] more restrictive institutional setting with school on the grounds as provided by the California Youth Authority will be necessary."

Under the circumstances the court quite properly concluded that defendant would benefit by the CYA, and his commitment was valid.

The judgment (order of commitment) is affirmed.

Kaus, P. J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 24, 1974.