[Crim. No. 30257. Second Dist., Div. Three. Aug. 26, 1977.]

In re MICHAEL R., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
MICHAEL R., Defendant and Appellant.

## COUNSEL

Paul Halvonik, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, and Janice L. Feinstein, Deputy State Public Defender, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari, Abram Weisbrot and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

POTTER, J.—Michael R., a 15-year-old minor, appeals from the order of the juvenile court adjudicating him a ward of the court under Welfare

and Institutions Code section 602[1] and committing him to the California Youth Authority. On December 6, 1976, a juvenile court petition was filed alleging that minor came within the provisions of section 602 by violation of Penal Code section 246.[2] On December 20, the petition was sustained following an adjudication hearing before Referee Victor Reichman. On January 14, 1977, the disposition hearing was held before a different referee, Jerry Moore.

The probation report prepared for the disposition hearing recommended placement in a "CAMP FACILITY" under the "CAMP-COMMUNITY PLACEMENT" program. There was no previous history of juvenile court appearance or even informal probation. The report, however, indicated several negative factors in this first offender's background including lack of a "STABLE HOME ENVIRONMENT," poor school attendance and grades, negative peer relationships, and a possibility of a resumption of hostilities.[3] In her "ANALYSIS AND PLAN," the officer then explained her reasons for her recommendation as follows: "THE LACK OF CONTROL IN THE FAMILY HOME, LOW EDUCATIONAL ACHIEVEMENT, THE MINOR'S INABILITY TO DISCUSS THE SITUATION AND THE SERIOUSNESS OF THE INCIDENT INDICATES [*sic*] A NEED FOR ON-GOING COUNSELING IN A DETAINED SITUATION. PLACEMENT IN THE CAMP FACILITY WILL OFFER THE MINOR AN OPPORTUNITY TO DEMONSTRATE A LEARNED CONTROL OF IMPULSES FOR HIMSELF AND TO EXERCISE PROPER JUDGMENT IN COMMUNITY SITUATIONS. [¶] DUE TO THE VIOLENT NATURE OF THE OFFENSE IT IS FELT THAT THE MINOR WOULD BE DIFFICULT TO PLACE IN A COMMUNITY SETTING AND THEREFORE PLACEMENT IS NOT WARRANTED AT THIS TIME. [¶] HOME ON PROBATION DOES NOT SEEM WARRANTED AT THE TIME DUE TO HIS MOTHER'S EMPLOYMENT AND HIS FATHER'S PHYSICAL DISABILITIES."

At the outset of the hearing, Referee Moore stated that he had read the probation report but that since he personally had not "heard the evidence," he "would like to hear what the evidence showed with respect to who fired the shots." The prosecutor pointed out that on December 1,

---

[1] Unless otherwise indicated, all statutory references are to the Welfare and Institutions Code. Section 602 provides in pertinent part: "Any person who is under the age of 18 years when he violates any law . . . is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

[2] Penal Code section 246 provides in pertinent part: "Any person who shall maliciously and willfully discharge a firearm at an inhabited dwelling house or occupied building, . . . is guilty of a felony, . . . ."

[3] The minor apparently viewed the incident as part of a "feud." His brother had been "jumped on" or threatened the previous week by one of the youths at that house.

1976, minor and three companions drove past the occupied home of some other youths three or four times, shots were fired from the car on "two of the occasions" and "it appeared" minor "fired the shots."

The referee then asked for argument by counsel, indicating that he was "not particularly decided at this point as to which disposition is indicated." He stated that he viewed the violation "as a very serious offense," but that "all possibilities appear to [be] open."

The three potential dispositions argued by opposing counsel were the same considered by the probation report: home on probation, community placement, or camp placement. The public defender argued that "either a placement situation or home on probation [in the father's custody] with strict conditions and involvement in some kind of program would be better for Michael than the camp program." In response, the district attorney, referring to the probation report and recommendations, argued in favor of the report's recommendation, pointing out the inadvisability of returning minor to the community at this time and "the disadvantages to returning the Minor to his home." The district attorney claimed "the proper recommendation should be in some type closed setting which emphasizes the responsibility of the Minor to himself and the persons around him."

The court then stated: "I am very concerned about the extreme wantonness of the conduct . . . firing at a dwelling house with people present. It is only luck that there isn't someone dead and this is a murder charge. I realize he didn't have an extensive record of convictions, but it appears his conduct has deteriorated in recent months and years. [¶] In fact, I should state for the record I have read and considered the probation report as received in evidence. The report card dated November 19, 1976, indicates all grades of fail and unsatisfactory work habits and citizenship. The comments indicate the Minor has serious problems with truancy and is involved with students who consistently defy authority. [¶] The thing that concerns me is that he is able to shoot at people and that in and of itself shows a pretty disturbed individual to me that I think means long term incarceration."

The minor's father and the probation officer then testified. The father indicated that he thought if he had custody, he could control the minor at home. In response the probation officer stated that the minor was excessively truant despite the father's taking the minor to school, and

reiterated her recommendation that minor's "conduct in the community warrants removal from the community."

The referee then said: "For the reasons stated, I find that the mental and physical condition and qualifications of the ward are such as to render it probable he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority. [¶] I find the welfare of the minor requires custody be taken from the parents and guardians. He is committed to the California Youth Authority."

On January 17, this appeal was filed.

### Contentions

Minor contends that the commitment to the California Youth Authority was an abuse of discretion. We agree for the reasons that follow. Since we must reverse the order and remand for a new disposition hearing, we need not reach minor's two other contentions that the referee failed (1) to adequately specify the findings under Welfare and Institutions Code section 726, and (2) to advise minor of his right to a rehearing by a judge.[4]

### The Commitment to the California Youth Authority Was Improper

Minor contends that his commitment to the California Youth Authority was an abuse of discretion because he "had never been exposed to [any] local treatment programs," and the commitment was improperly based on "retribution rather than rehabilitation."

The rule governing our review of the propriety of the California Youth Authority commitment was stated in *In re Clarence B.,* 37 Cal.App.3d 676, 682 [112 Cal.Rptr. 474]: "It is well settled in California that when a public offense has been committed by a juvenile, certification of the juvenile to the CYA is within the sound discretion of the committing court, be it the juvenile court (Welf. & Inst. Code, §§ 731, 1736) or the superior court (Welf. & Inst. Code, § 1731.5). (See *In re Dale S.,* 10 Cal.App.3d 952, 957 [89 Cal.Rptr. 499]; *People* v. *Moran,* 1 Cal.3d 755, 762 [83 Cal.Rptr. 411, 463 P.2d 763]; *People* v. *Woolbert,* 232

---

[4]Although minor's notice of appeal refers to both the adjudication and commitment, the issues argued concern only the disposition hearing. No claim of error of law has been raised with respect to the adjudication. The adjudication, therefore, is not at issue.

Cal.App.2d 544, 547 [42 Cal.Rptr. 919].) ■ The decision of the juvenile or superior court may be reversed on appeal only upon a showing that the court abused its discretion in committing the minor to the CYA. (See *In re Dale S., supra,* at p. 957; *People* v. *Hutson,* 221 Cal.App.2d 751, 754 [34 Cal.Rptr. 790].) A reviewing court must indulge in all reasonable inferences to support the findings of the juvenile court, and such findings will not be disturbed on appeal when there is substantial evidence to support them. (*In re Schubert,* 153 Cal.App.2d 138, 143 [313 P.2d 968].)" (See also *In re Willy L.,* 56 Cal.App.3d 256, 265 [128 Cal.Rptr. 592].)

In order to determine whether there was substantial evidence to support this commitment, we must examine the evidence presented at the disposition hearing in light of the purposes of the Juvenile Court Law.

The general statutory purposes of the law are stated in section 502 of the Welfare and Institutions Code. That section provides:

"(a) The purpose of this chapter is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the state; to protect the public from criminal conduct by minors; to impose on the minor a sense of responsibility for his own acts; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when necessary for his welfare or for the safety and protection of the public; and, when the minor is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents. This chapter shall be liberally construed to carry out these purposes.

"(b) The purpose of this chapter also includes the protection of the public from the consequences of criminal activity, and to such purpose probation officers, peace officers, prosecuting attorneys, and juvenile courts shall take into account such protection of the public in their determinations under this chapter."

■ The rehabilitative purpose of the Juvenile Court Law was expressed in *In re Aline D.,* 14 Cal.3d 557 [121 Cal.Rptr. 816, 536 P.2d 65]. In *Aline D.,* our Supreme Court stated: "Juvenile commitment proceedings are designed for the purpose of rehabilitation and treatment,

not punishment." (*Id.* at p. 567.) The court noted that implementation of the principle of rehabilitation involves a progressive dispositional framework. (*Id.* at p. 564):

" 'The statutory scheme . . . as now embodied in sections 730 et seq. of the Welfare and Institutions Code, *contemplates a progressively restrictive and punitive series of disposition orders* in cases such as that now before us—namely, home placement under supervision, foster home placement, placement in a local treatment facility and, as a last resort, Youth Authority placement.'

"As is evident from the applicable statutes, *'Commitments to the California Youth Authority are made only in the most serious cases and only after all else has failed.'* (Thompson, Cal. Juvenile Court Deskbook, § 9.15, p. 123.) This concept is well established and has been expressed by the CYA itself. In light of the general purposes of juvenile commitments expressed in Welfare and Institutions Code section 502, discussed above, ' . . . commitment to the Youth Authority is generally viewed as *the final treatment resource* available to the juvenile court and which least meets the description in the above provision [§ 502]. Within the Youth Authority system, there is gathered from throughout the State the most severely delinquent youths which *have exhausted local programs.'* (Italics added; California Youth Authority, Criteria and Procedure for Referral of Juvenile Court Cases to the Youth Authority (1971) p. 1.)" (Italics added.)

More recently in *In re Arthur N.,* 16 Cal.3d 226 [127 Cal.Rptr. 641, 545 P.2d 1345], involving a C.Y.A. commitment ordered for another section 602 ward with a history of minor criminal offenses, the Supreme Court reiterated the principle of *Aline D.* that " 'The Juvenile Court Law "contemplates a progressively restrictive and punitive series of disposition orders in cases such as that now before us—namely, home placement under supervision, foster home placement, placement in a local treatment facility and, *as a last resort, Youth Authority placement."* ' " *(Id.* at p. 237; italics added.)

The progressive nature of disposition orders is thus a major component of Juvenile Court Law. Moreover, the Supreme Court has not limited its application to minors who commit less serious criminal offenses than the minor herein. Thus, in *In re Bryan,* 16 Cal.3d 782 [129 Cal.Rptr. 293, 548 P.2d 693], where the minor had been adjudicated a section 602 ward for committing a murder, the Supreme Court again cited the principle

first stated in *Aline D.* that: "Commitment to the Youth Authority is the placement of last resort for juvenile offenders." (*Id.* at p. 788.)

In the case at bench, minor was a 15-year-old first offender who had never previously appeared in juvenile court. Yet the court committed him to this "placement of last resort." (*Id.*) There was no "progressively restrictive . . . series of disposition orders" nor was there any exhaustion of "local programs." (*In re Aline D., supra,* at p. 564.) Whereas the Supreme Court stated in *Aline D.* that such " '[c]ommitments to the California Youth Authority are made only in the most serious cases *and only after all else has failed* ' " (*id.*; italics added), in the case herein minor had neither been tried nor failed in any alternative dispositions.[5]

Nor was there any evidence before the court that all of these alternative dispositions were unavailable or inappropriate for this minor. In *In re Lawrence B.,* 61 Cal.App.3d 671 [132 Cal.Rptr. 599], a minor who had been adjudicated a section 602 ward on the basis of committing two acts of rape and kidnapping was committed to the C.Y.A. The court reversed, holding that "[i]t is the mandate of section 726 that a commitment to the Youth Authority [can] be made only as a last resort

[5]Despite the court's reference to minor's not having suffered "extensive" convictions, the probation report reveals that minor had in fact never been convicted or even tried for any offense. Minor's only prior "CONTACTS" with the police or juvenile justice system consisted of the following: three times he was "COUNSELED AND RELEASED" by the police; and twice matters were referred to the district attorney for legal review wherein the district attorney had apparently not taken any action. These clearly cannot serve as any basis for the commitment order. In *People v. Chi Ko Wong,* 18 Cal.3d 698, 719 [135 Cal.Rptr. 392, 557 P.2d 976], our Supreme Court found improper the inclusion of "evidence of police contacts not leading to arrest or conviction . . . without supporting information." Further content to this comment was given in footnote 17 (18 Cal.3d at pp. 719-720): " 'The practice of including raw arrest data in a probation report is condemned by the American Bar Association's Standards for Criminal Justice. ". . . the Advisory Committee means to include only those charges which have resulted in a conviction. Arrests, juvenile dispositions short of an adjudication, and the like, can be extremely misleading and damaging if presented to the court as part of a section of the report *which deals with past convictions.* If such items should be included at all—and the Advisory Committee would not provide for their inclusion—at the very least *a detailed effort should be undertaken to assure that the reader of the report cannot possibly mistake an arrest for a conviction."* (Standards Relating to Probation (Tent. Draft 1970) p. 37.)' (*People v. Calloway, supra,* 37 Cal.App.3d 905, 908; italics added.)" (Italics added.)

The reports of "contacts" included in the probation report in the case at bench would appear to have sufficient information so as not to offend these standards. The referee's statement, however, implies that minor may have been prejudiced by their inclusion. The referee apparently did mistake a contact for a conviction. His disposition order may have been affected accordingly. In any event, as previously noted, these "contacts" cannot be used to uphold the California Youth Authority commitment on appeal.

when the lesser remedies of probation or juvenile camp placement have failed or clearly are inappropriate." (*Id.* at p. 674.)

Respondent apparently concedes that the appropriateness of less restrictive alternatives must be considered. He contends, however, that the court "specifically considered and rejected, as inappropriate, less restrictive alternatives and found that a Youth Authority commitment would benefit" the minor.[6] The record shows otherwise.

In the case at bench, the only evidence before the court with respect to disposition other than the circumstances of the offense was the probation officer's report which included her opinion that camp placement was required as opposed to the less restrictive alternatives of home on probation and suitable placement. At no point during the disposition hearing or in the probation report was there any discussion of the suitability of camp placement as opposed to a California Youth Authority commitment. In fact, the California Youth Authority was never even mentioned in the probation report or in the arguments of the prosecution or defense. Nor did the court ever indicate during the hearing that it disagreed with the camp placement recommendation, or any other aspect of the probation report, despite the fact that the probation officer was present and consulted by the court. Insofar as the court never even referred to the California Youth Authority prior to announcing its conclusion in the statutory language of section 734 that the minor would benefit from such a commitment, there was no evidence with respect to the merits of a Youth Authority commitment. Moreover, the probation officer's evaluation of camp placement as a sufficiently restrictive, appropriate remedy was uncontroverted.

■ While the language of *Aline D.* that California Youth Authority commitment is "a last resort" (14 Cal.3d at p. 564) does not mandate a mechanical lock-step progression through each possible disposition, it requires that the rejection of lesser remedies be supported by evidence on the record of their inappropriateness necessitating use of the

[6]In *Aline D.,* the court reversed a commitment to the California Youth Authority because it was not "supported by a determination, based upon substantial evidence in the record, of probable benefit to the minor." (14 Cal.3d at p. 567.) In its discussion, the court referred to sections 502 and 734. It found the commitment violated section 734 which provides: "No ward of the juvenile court shall be committed to the Youth Authority unless the judge of the court is fully satisified that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority."

California Youth Authority "final treatment resource." (*Id.*) In view of the lack of evidence suggesting unsuitability of the programs and treatment available at the county probation camps, the court could not reasonably conclude that a California Youth Authority commitment was necessary, let alone beneficial.

Nor can camp placement be deemed inappropriate and the California Youth Authority commitment in this case be sustained solely on the seriousness of the offense. As respondent concedes, and as both the majority and dissent agreed in *In re Lawrence B., supra,* 61 Cal.App.3d 671, the "mere fact that a minor has committed a serious felony [is] not, in and of itself, a ground for a Youth Authority Commitment. [Fn. omitted.]" (*Id.* at pp. 674, 677; see also *In re J. L. P.,* 25 Cal.App.3d 86, 89 [100 Cal.Rptr. 601].) Underlying this view is the rationale that commitment solely on such grounds "would be punitive in effect" (*In re Lawrence B., supra,* 61 Cal.App.3d at p. 677; *In re J. L. P., supra,* 25 Cal.App.3d at p. 89) and, therefore, contrary to the rehabilitative purpose of the Juvenile Court Law.

 In the instant case, when the referee announced his decision, he prefaced his finding with the statement that he was making his order "[f]or the reasons stated." While no reasons were given at that point, the court's prior statements regarding the "extreme wantonness" and seriousness of the offense reveal that he based his decision almost, if not entirely, on the nature or gravity of the offense.[7] The only other factors mentioned by the court were minor's "deteriorated" conduct and his unsatisfactory school records.

---

[7]We treat the referee's reference to the need for long-term "incarceration" as further indication of his emphasis on the gravity of the offense as the basis for his disposition. None of the parties at the hearing or on appeal has claimed that the court was referring to the amount of time needed for the minor's rehabilitation or that a camp disposition would not suffice because of the time needed for such treatment. Nor could such an argument sustain the disposition herein. Regardless of the disposition order, the juvenile court would retain jurisdiction over this minor until age 21 since he was adjudicated a section 602 ward for committing an offense when he was 15 years old. (§§ 607, 707.) As for confinement or "incarceration," the maximum permissible on a California Youth Authority commitment would be the amount of time for which an adult convicted of violating Penal Code section 246 could be incarcerated. (§§ 726, 731; see *In re Aaron N.,* 70 Cal.App.3d 931 [139 Cal.Rptr. 258].) The county probation camp, if it chose, theoretically could legally hold the minor confined for the same time period. (§§ 726, 730.) At the California Youth Authority the minor probably would receive a one-year continuance date. (See Cal. Youth Authority Board Policy Manual, § 30, subd. (III)(14).) Average camp time is approximately a little more than six months. (Cal. Juvenile Court Practice (Cont.Ed.Bar 1968) Appen. C., pp. 208-215.) The amount of time any minor actually spends at camp apparently depends on the individual's progress towards rehabilitation; it is generally tied to the merit system so that the minor, in effect, by his

Minor's school problems of failing grades and unsatisfactory work habits, excessive truancy, and association with other students who defy authority cannot serve as a basis for this disposition. Insofar as these are valid considerations upon disposition,[8] there is no evidence that a camp program cannot treat these problems as effectively as a C.Y.A. program. In either case, minor would be in a detained situation; he would, therefore, be removed from any negative influence caused by association with his former fellow students. In addition, his school attendance could be enforced. In general, throughout the state "[m]ost ranches and camps are operated as combination school and work programs." (Juv. Ct. Deskbook, § 9.14 at p. 122.) The Los Angeles County Probation Department operates numerous junior and senior probation camps. (See, e.g., Los Angeles County Probation Department Juvenile Manual, ch. 406.08, pp. 5-6.) On these premises, education is provided by certified special education teachers and administered through the Los Angeles County schools. As a 15-year-old, minor apparently would be sent to a junior probation camp where he would be enrolled in a full-time school program. (*Id.* at pp. 1-6; Cal. Juvenile Court Practice (Cont. Ed. Bar, *supra*) Appen. C, p. 204.) The county resources are, therefore, available. Moreover, the county camp program cannot be deemed inappropriate on the basis of content since no evidence was ever presented comparing the county camp school program with an equivalent C.Y.A. program.

Nor can the reference to the "deteriorated" conduct of a minor who has never even been exposed to any of the available formal or informal county probation programs justify such a commitment. The probation officer in his report indicated the value of these programs. We cannot

---

behavior and diligence determines how soon he will be released. (See Thompson, Cal. Juvenile Court Deskbook, § 9.14, p. 122 (hereinafter cited as Juv. Ct. Deskbook).) Thus, if the minor required "long-term incarceration" for treatment, he could be kept longer and, as previously noted, could legally be held until the same maximum as California Youth Authority. Moreover, according to the Los Angeles County Probation Department Juvenile Manual, chapter 406.08, their camp "[p]rogram duration is usually one year with approximately six months of [residential] camp treatment followed by approximately six months of supervision in the community" (*id.* at p. 5) through "an intensive after-care, supervision and treatment program" (*id.* at p. 3) where if the "behavior of minor fails to meet community treatment objectives, [he] may be voluntarily returned to camp without further court order" (*id.*, at p. 2).

[8]A failing report card is, of course, not an offense in itself. Moreover, the Legislature has provided that prior to referring a minor to juvenile court for excessive truancy or habitual disobedience of school authorities, he must first be referred to a school attendance review board. (§ 601.1.) If that board determines existing facilities cannot correct the matter, the minor can be adjudged a section 601 ward, but the Legislature has expressed its "intent" that he shall not even be removed from parental custody except during school hours solely on the basis of school truancy or disobedience. (§ 601.)

assume without some evidence on the record that minor will not respond to the counseling techniques, merit system and other aspects of the camp programs. (See Juv. Ct. Deskbook, § 9.14, p. 122; L.A. County Prob. Dept. Juv. Man., ch. 406.08, pp. 1-6.)[9]

Thus, the only evidence before the court in the disposition hearing which could support the C.Y.A. commitment was the seriousness of the offense. As previously discussed, under applicable law, based on the traditional purpose of rehabilitation, the seriousness of the offense cannot be the sole basis for such a commitment.

▇ Recently, the Legislature added the protection of society and development of responsibility of the minor as concomitant purposes of the Juvenile Court Law. (See § 502, subds. (a) and (b), amended by Stats. 1975, ch. 819, § 1; Stats. 1976, ch. 1071, § 4.) Naturally, to the extent that any of the purposes apparently conflict with other articulated goals, the court should attempt to harmonize them. In this context, the least restrictive alternative disposition available to rehabilitate the individual minor while adequately protecting the public would be the appropriate disposition. ▇ While it may at first appear that there is a conflict between the protection of society and the rehabilitation of the minor because of the seriousness or nature of the offense, closer examination reveals that there is no such conflict in this case.

The probation officer's report specifically cited "THE SERIOUSNESS OF THE INCIDENT" and its "VIOLENT NATURE" as factors indicating the need for placement in a camp program, rather than "IN A COMMUNITY SETTING." There was no suggestion by anyone at the hearing that the proposed "removal from the community" by camp placement would not accomplish this protective purpose. Since the minor is removed from the community and placed in a detained setting by either camp or C.Y.A. placement, the public (and any potential victim) is protected from the possibility of any resumption of hostilities or further violence.

Similarly, camp placement fulfills the purpose of imposing responsibility on minor for his acts. The probation officer, as previously noted,

[9]In this respect, we note that the probation officer's "15-DAY DETENTION REVIEW" report to the court on January 28, 1977 revealed that minor's adjustment in postdisposition detention pending transportation to C.Y.A. was "SATISFACTORY." Moreover, the probation officer specifically observed that minor's conduct had improved. The officer reported that "minor's attitude and cooperation [was] poor at beginning of detention 2 wks ago. Since then [he] has settled down—attends school and is at the top of merit ladder in unit."

recommended camp as a means of developing responsibility by offering minor the chance "To Demonstrate A Learned Control Of Impulses For Himself And To Exercise Proper Judgment In Community Situations." Further support for the probation officer's unchallenged evaluation of the value of a camp program in this respect can be found in the Juvenile Court Deskbook where it is pointed out that the "approach" in camps which "are usually nonsecurity institutions" "is conducive to the building of inner control in minors." (§ 9.14 at p. 122.)

It is, therefore, clear that the additions to the purposes of the Juvenile Court Law would not validate the commitment herein to the C.Y.A. based solely on the seriousness of the offense. In this case, camp placement, a less restrictive alternative, was an appropriate disposition since it fulfilled all the purposes of the Juvenile Court Law. Accordingly, the C.Y.A. commitment of this first offender solely on the basis of the seriousness of the offense was an abuse of discretion. We do not hold that a juvenile court can never send a first offender to the C.Y.A.[10] All we hold is that the juvenile court must consider each individual case on its merits without a mechanized approach based solely on the seriousness of the offense and must evaluate the appropriateness of the available lesser alternative dispositions in light of the purposes of the Juvenile Court Law. Before committing a minor to the C.Y.A., there should be some evidence in the record to support a finding that all these purposes cannot be accomplished by placement in a county facility.

We conclude, therefore, that under the evidence of this case, the commitment to the C.Y.A. was an abuse of discretion. Accordingly, the

---

[10]Our decision does not conflict with *In re Willy L.*, 56 Cal.App.3d 256 [128 Cal.Rptr. 592], referred to by respondent. In *In re Willy L.*, the minor was a 17-year-old first offender who was adjudicated a section 602 ward on the basis of burglary, narcotics offenses and Vehicle Code violations, and was committed to the C.Y.A. The *Willy L.* court found that substantial evidence supported the juvenile court's disposition. The court found that the failure to commit the minor to a less restrictive placement was not an abuse of discretion. Willy L. had been "involved in a 'serious pattern of delinquent behavior,' " (*id.* at p. 263) and was a "mentally bright" (*ibid.*) "calculating sophisticated youth who [was] described in the probation report as a leader of a delinquent peer group with a reputation as a 'big drug dealer' " (*id.* at p. 264). The court distinguished *Willy L.* from *Aline D.* on this ground, pointing out that "Aline D.'s anti-social conduct appears to be impulsive and the product of poor peer associations." (*Ibid.*) The latter description would more accurately describe Michael than the former. Furthermore, the C.Y.A. commitment was justified because of the minor's participation in a carefully planned "large scale burglary" (*id.* at p. 263) and narcotics dealings. Unlike our case, camp was specifically rejected as an alternative disposition because it would "offer Willy L. opportunities to continue his 'salesmanship' of controlled substances in relative security." (*Id.* at p. 265.) Thus, the protection of the public would not have been accomplished by a camp placement. Finally, Willy L. apparently had, at least, been exposed to informal probation programs.

disposition order appealed from must be reversed and the commitment vacated.

### Disposition

The disposition order committing minor to the California Youth Authority is reversed and remanded to the juvenile court for disposition in a manner consistent with this opinion.

Cobey, Acting P. J., and Allport, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 20, 1977.