Filed 6/1/21  In re A.L. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | 2d Crim. No. B303775 (Super. Ct. No. PJ52367) (Los Angeles County) |
| THE PEOPLE, Plaintiff and Respondent, v. A.L., Defendant and Appellant. | |

A.L. appeals from the juvenile court's order committing him to the custody and care of the Division of Juvenile Justice (DJJ) for a maximum term of 18 years.  He contends:  (1) the court abused its discretion when it ordered a DJJ commitment, (2) his maximum term of confinement must be recalculated, and (3) the commitment form must be corrected.  We remand for a new disposition hearing, and otherwise affirm.

FACTUAL AND PROCEDURAL HISTORY

In January 2017, A.L. and other members of a Los Angeles street gang surrounded R.G.'s car and forced him to stop. When R.G. got out of the car, one of the gang members shot him in the leg, causing him to fall to the ground. A.L. fired several more shots as R.G. attempted to stand up. R.G. was eventually able to get back to his car and drive away.

In a petition filed pursuant to Welfare and Institutions Code[1] section 602, prosecutors alleged that A.L. committed attempted murder (Pen. Code, §§ 664/187, subd. (a); count 1), assault with force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(4); count 2), and assault with a firearm (Pen. Code, § 245, subd. (a)(2); count 3). They also alleged that he personally used and discharged a firearm (Pen. Code, §§ 12022.5, subd. (a), 12022.53, subds. (b) & (c)) and that he committed his crimes for the benefit of a criminal street gang (Pen. Code, § 186.22, subds. (b)(1)(A) & (b)(1)(C)).

At the jurisdictional hearing, a police officer opined that A.L. is a member of a criminal street gang. A psychologist testified that A.L. had intelligence on par with a seven year old. His low IQ indicated that he lacked planning and self-control, and that he was a follower. A defense gang expert opined that younger gang members like A.L. are easily influenced by older gang members.

At the conclusion of the hearing, the juvenile court found the allegations in counts 2 and 3 to be true. It also found true the firearm and gang allegations. It declared A.L. a ward of the court, and ordered him suitably placed at Rancho San

---

[1] Unlabeled statutory references are to the Welfare and Institutions Code.

Antonio group home.  The court calculated A.L.'s maximum term of confinement as 18 years:  four years on count 3, a consecutive 10 years on the firearm enhancement, and a consecutive four years on the gang enhancement.  It said that the identical term imposed on count 2 "merge[d]" into the term on count 3.

Less than a week after his placement, A.L. left the group home without permission and did not return.  Three weeks after that, a former member of A.L.'s gang told police that A.L. and four other gang members hit and kicked him and knocked him to the ground.  After he got up and started to run away, one of the gang members pulled out a knife.  A.L. told him to put it away.

The following month, J.R. picked up several people in his car, including A.L.  At one point during their drive someone told J.R. to stop.  One of the people got out, put a taser to J.R.'s head, and told him to get out of the car.  A.L. moved into the driver's seat and drove away.

A police officer saw J.R.'s car drive past him three days later.  He activated the lights on his patrol vehicle and attempted to stop the car.  A.L., who was driving, sped away from the officer.  After committing several traffic violations, A.L. slowed and jumped from the moving car.

The probation department filed a section 777 petition alleging that A.L. left his group home without permission.  In a second section 777 petition the department alleged that A.L. committed criminal threats (Pen. Code, § 422) and assault with force likely to cause great bodily injury, both for the benefit of a criminal street gang; carjacking (Pen. Code, § 215); evading a peace officer with wanton disregard (Veh. Code, § 2800.2); and unlawfully driving or taking a vehicle (Veh. Code, § 10851, subd.

3

(a)).  The juvenile court sent A.L. to juvenile hall pending disposition of the petitions.

During pretrial custody in juvenile hall, A.L. had "very stable" behavior and few write-ups.  He attended school, participated in unit activities, and followed his programming.  He got along well with his peers and complied with officers' commands.  He renounced his gang ties.  A social worker believed that these successes stemmed, at least in part, from the programming A.L. received, which could be replicated in an out-of-area or out-of-state placement.  The juvenile court nevertheless ordered a DJJ commitment after finding true the allegations in the section 777 petitions.

## DISCUSSION

### *DJJ commitment*

A.L. first contends the juvenile court erred when it ordered him committed to the custody and care of DJJ rather than a less restrictive placement.  We disagree.

"One of the primary objectives of juvenile court law is rehabilitation, and the statutory scheme contemplates a progressively more restrictive and punitive series of dispositions starting with home placement . . . and progressing to . . . placement at the DJJ."  (*In re M.S.* (2009) 174 Cal.App.4th 1241, 1250.)  "Although the DJJ is normally a placement of last resort, there is no absolute rule that a DJJ commitment cannot be ordered unless less restrictive placements have been attempted."  (*Ibid.*)  Moreover, the court need not "find exactly how a minor will benefit from being committed to DJJ."  (*In re Jonathan T.* (2008) 166 Cal.App.4th 474, 486.)  Such a commitment is permissible so long as "the evidence demonstrates a probable benefit to the minor from the commitment and less restrictive

4

alternatives would be ineffective or inappropriate." (*In re M.S.*, at p. 1250.)

We review the juvenile court's order committing A.L. to DJJ custody for abuse of discretion. (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288.) We indulge all reasonable inferences in support of the order, and will not disturb it if supported by substantial evidence. (*Ibid.*) To determine whether substantial evidence supports the commitment order, we examine the record in light of the purposes of the Juvenile Court Law, which include punishment as a rehabilitative tool and the protection of public safety. (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 53.)

There was no abuse of discretion here. The severity of A.L.'s assault alone (see § 725.5) shows that guidance in the form of a DJJ commitment will result in a probable benefit and the protection of public safety. (See, e.g., *In re Jonathan T.*, *supra*, 166 Cal.App.4th at p. 486 [probable benefit of treatment in DJJ commitment].) And A.L.'s actions showed the ineffectiveness of less restrictive alternatives: Within one week of his initial placement at Rancho San Antonio, A.L. absconded. (*In re James H.* (1985) 165 Cal.App.3d 911, 923 [minor who was "prone to escape . . . needed a closed setting"], disapproved on another point by *K.R. v. Superior Court* (2017) 3 Cal.5th 295, 313, fn. 10.) He then committed a series of serious crimes. (*In re A.R.* (2018) 24 Cal.App.5th 1076, 1081-1082 [minor's criminal history showed probable benefit of DJJ placement].) Given his initial placement failure and delinquent history, the juvenile court "quite properly concluded that [he] would benefit by" a DJJ placement. (*In re Clarence B.* (1974) 37 Cal.App.3d 676, 683.)

5

*Maximum term of confinement*

A.L. next contends, and the Attorney General concedes, the juvenile court erroneously calculated his maximum term of confinement because:  (1) the term included both firearm and gang enhancements, in violation of Penal Code section 1170.1, subdivision (f), and (2) Senate Bill No. 823 (2019-2020 Reg. Sess.) (S.B. 823), which applies retroactively to his case, requires the reduction of his term.  We agree with both contentions.

*1.  Firearm and gang enhancements*

Penal Code section 12022.5, subdivision (a), provides that "any person who personally uses a firearm in the commission of a felony . . . shall be punished by an additional and consecutive term of imprisonment in the state prison for [three], [four], or 10 years."  Penal Code section 186.22, subdivision (b)(1)(A), provides that any person who commits a felony for the benefit of a criminal street gang "shall be punished by an additional term of two, three, or four years."  Penal Code section 186.22, subdivision (b)(1)(C), provides that any person who commits a violent felony for the benefit of a gang "shall be punished by an additional term of 10 years."

Here, the juvenile court erred when it calculated A.L.'s maximum term of confinement by basing it on subdivision (b)(1)(A) of Penal Code section 186.22 rather than subdivision (b)(1)(C):  Because his assaults qualified as violent felonies due to his use of a firearm (see Pen. Code, § 667.5, subd. (c)(8)), a 10-year gang enhancement (rather than the court-imposed four years) was mandatory.  (*People v. Francis* (2017) 16 Cal.App.5th 876, 883.)  But a court may not impose both a firearm enhancement pursuant to Penal Code section 12022.5,

6

subdivision (a), and a gang enhancement pursuant to Penal Code section 186.22, subdivision (b)(1)(C), where, as here, the underlying crime qualified as a violent felony solely because it involved the use of a firearm. (*People v. Rodriguez* (2009) 47 Cal.4th 501, 509; see Pen. Code, § 1170.1, subd. (f).) On remand, the juvenile court must recalculate A.L.'s maximum term of confinement in a manner that does not violate Penal Code section 1170.1, subdivision (f). (*Rodriguez*, at p. 510.)

*2. S.B. 823*

When A.L. assaulted R.G., section 731, subdivision (c), provided that the juvenile court could not commit a minor to DJJ custody "for a period that exceeds the maximum term of imprisonment that could be imposed upon an adult convicted of the same offense." This period was calculated by adding any applicable enhancements to the maximum term of imprisonment that could be imposed on an adult who committed the same crime. (§ 726, subd. (d)(2).) Effective September 30, 2020, S.B. 823 limits the maximum term of confinement for a minor committed to DJJ custody to a period that does not exceed "the *middle* term of imprisonment that could be imposed [on] an adult convicted of the same offense." (Stats. 2020, ch. 337, § 28, italics added.) Because it is an ameliorative statute that provides for the possibility of lesser punishment, S.B. 823 applies to cases that are not yet final on appeal. (*In re Estrada* (1965) 63 Cal.2d 740, 744-745.)

Here, the juvenile court calculated A.L.'s maximum term of confinement by adding the firearm and gang enhancements to a base term of four years—the upper term of imprisonment that could be imposed on A.L.'s assault convictions. Pursuant to S.B. 823, that term no longer applies.

7

The juvenile court must recalculate A.L.'s maximum term of confinement under the new law. (*People v. Navarro* (2007) 40 Cal.4th 668, 681.)

*DJJ commitment form*

Finally, A.L. contends the DJJ commitment form must be corrected to reflect that the juvenile court stayed the commitment term on count 2. We agree. (*People v. Mesa* (1975) 14 Cal.3d 466, 471 [oral pronouncement controls over abstract of judgment]; see also Pen. Code, § 654, subd. (a) [single act that results in multiple convictions may be punished only once].)

DISPOSITION

The juvenile court's disposition order, entered November 19, 2019, is vacated, and the matter is remanded for a new disposition hearing. At that hearing the court shall recalculate A.L.'s maximum term of confinement in a manner that comports with the provisions of Penal Code section 1170.1, subdivision (f), and S.B. 823. It shall then issue a new DJJ commitment form reflecting the recalculated maximum term of confinement and that the commitment term on count 2 has been stayed pursuant to Penal Code section 654. In all other respects, the order is affirmed.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

GILBERT, P. J.          YEGAN, J.

8

Morton Rochman, Judge

Superior Court County of Los Angeles

_____

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.